**EXHIBIT D**

Volume I
Pages: 1-62
Exhibits: 0

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS. SUPERIOR COURT DEPARTMENT OF THE TRIAL COURT

******************************
EDWINA BROOKE-PETIT *
Plaintiff *
*
v. * DOCKET NUMBER MICV2006-04145
*
ROBERT SPAGNUOLO *
Defendant *
*
******************************

JURY INSTRUCTIONS ONLY
BEFORE THE HONORABLE DENNIS J. CURRAN

Woburn, Massachusetts
August 24, 2010

Recording produced by digital audio recording system. Transcript produced by Approved Court Transcriber, Donna Holmes

# I N D E X

| WITNESS | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|
| None - Jury Instructions Only | | | | |

**P R O C E E D I N G S**

(Court called to order.)

THE COURT: Ladies and gentlemen of the jury, you're about to begin your final duty which is to decide the factual issues in this case. Before you do that, I'm going to instruct you on the law.

As I said at the outset of this case, my function as the Judge in this case is to make sure that -- that this trial -- trial was conducted fairly, orderly, and efficiently. It's also my responsibility to rule on what you may consider as evidence and to instruct to you on the law as it applies to this case.

It is your duty, in fact your sworn duty, as jurors to accept the law as I state it to you. Consider all of my instructions as a whole. Don't ignore any instruction. Don't give special attention to one in particular instruction. Follow the law as I give it to you whether you agree with it or not.

It's the duty of both lawyers in this case to object when the other side offered evidence that that lawyer believed was not admissible under our rules of evidence. They also had an obligation to be -- speak to me at sidebar about questions of law which the law requires me to rule on outside of your hearing.

Now, the purpose, contrary to what you see on Hollywood

drama and television programs, the purpose of such objections and sidebar conferences is not to play a shell game with the evidence. It's not to keep relevant information from you. Actually, it's just the opposite. To make sure what you hear is relevant to this case and that the evidence is presented in a way to give you a fair opportunity to evaluate its worth, so what I'm saying is, in short, don't draw any inference favorable or unfavorable toward either lawyer or their client for objecting to proposed evidence or requesting sidebar conferences. That's the professional responsibility of the lawyer.

Let me talk to you about your function. You determine the facts of the case. You're the sole and exclusive judges of the facts. You alone determine what evidence to accept, how important any evidence is that you do accept and what conclusions to draw from all the believable evidence. Apply the law as I give it to you to the facts -- I'm going to have to give you some medicine or something here. Take -- take whatever you need.

UNIDENTIFIED ATTORNEY: I'm sorry, your Honor.

THE COURT: It's all right. It's all right. It's just that it's kind of an important part of the trial. Take whatever he needs.

You alone determine what evidence to accept, how important any evidence is that you do accept, and what conclusions to

draw from all the believable evidence. Apply the law as I give it to you to the facts as you determine them to be in order to decide whether Ms. Brooke-Petit has proven her case.

Now, determine the facts based solely on a fair consideration of the evidence. Be completely fair and impartial. Don't be swayed by prejudice, sympathy, likes or dislikes towards either side. Don't decide this case based on anything you may have seen or heard out -- outside of this courtroom, and don't engage in any guesswork about any unanswered questions that remain in your mind or speculate what the real facts may or may not have been if there weren't introduced into evidence in this case.

Please also don't consider anything that I've said or done during the course of the trial in ruling on motions or objections or comments to the lawyers or in questions to a witness, I think I asked one question to one witness just to clarify something that I thought may have been confusing to all of us, or in setting forth the law in these instructions as any opinion that I have about what your verdict ought to be. Please do not believe that I have any opinion about what the facts of this case are. I have not read -- in truth, I have not read the exhibits. There is -- there's many, many, many, many exhibits, many, many, many photographs and -- and almost none of them have I studied, so I -- I really do not have any opinion about the case. That's your province.

That's your constitutional responsibility and that is your duty, not mine.

Let's talk about what constitutes evidence. Decide this case, as I've said several times now, based solely on the evidence in this case, not from suspicion, not from conjecture, and not from matters not admitted into evidence.

Now, the evidence consists of the testimony of witnesses as you recall it and any documents or photographs or other things that have been marked as exhibits, and you'll have all of those with you in the jury deliberation room. There'll actually probably be a little bit of a pause before you see those exhibits because the lawyers want to put them in order. We have to verify that they're all accounted for and then we introduce them to you through the Court Officer to you in the jury deliberation room.

Now, you alone determine the weight, the value, and importance of the testimony and the exhibits to help you make your ultimate judgment about whether the plaintiff has proven her case.

Now, we in the legal profession love paper. We actually all should own stock in paper companies, I'm convinced. But -- and I'm convinced also that we -- we love it too much, but just because lawyers love paper and -- doesn't mean that you should fall in love with paper also. A -- in other words, what I'm trying to tell you is just because something's on a

piece of paper, doesn't mean you have to believe it. You can believe it, you don't have to believe it. You can believe some of what's on it or not. It's your call. It's entirely your call.

Now, the quality or strength of the proof isn't determined by the sheer volume of exhibits or the number of witnesses or evidence. It's rather the weight of the evidence, the strength intending to prove the issue that's at stake that's important. You can find, for example, that a smaller number of witnesses who testify to a particular fact are more believable than a larger number of witnesses who testify to the opposite or vice versa.

Now, as I said at the beginning, some things are during -- occur during the course of the trial are not evidence, and don't consider them as evidence when you decide the facts of the case.

A lawyer's question to a witness, not evidence. Only the answer that comes out of the mouth of the witness is evidence.

Don't consider any answer that I told you was stricken from the record. I may have told you to strike it or disregard it meaning don't consider such answers.

Anything that you may have seen or heard outside of the courtroom when it wasn't in session is not evidence.

Opening statements, not evidence.

Closing arguments of the lawyers, not evidence. In fact,

nothing that's said by either lawyer or myself for that matter constitutes evidence.

My instructions on the law, not evidence. And if you or I have referred to evidence in a way that -- I mean the lawyers or I have referred to evidence in a way that differs from your memory, it is your collective recollection that controls.

Consider the evidence as a whole. Don't make up your mind about what the verdict should be until -- should be until after you've gone into the jury deliberation room and discussed this case with your fellow jurors. Keep an open mind until that point.

Let's talk about the two kinds of evidence. If you take anything away from this several days' experience, take this. Evidence comes in in two forms. You may hear some people on TV who really don't know what they're talking about say, well, Jack, that case was all circumstantial. I'm imitating some reporter on a scene usually on a case in a California. They always seem to be in California. Maybe it's more interesting to live there. I don't know, but they do seem to be in California. So the point is that these talking heads on television will say well that was all circumstantial as if you, the listener on the TV or anybody else, should completely disregard a case because it's a circumstantial evidence case. Absolutely, totally, completely, utterly wrong.

There are in fact two ways of move -- moving a case, of

proving a case. One is direct evidence.

Direct evidence is pretty simple. It's what someone claims to have seen or testifies directly about a fact to be proven based on what they claim to have seen or heard or felt with their own five senses. Really, that's what direct evidence is. Very simple. And really the only question for you on direct evidence is do you believe the witness. Do you believe the witness?

Now, what circumstantial evidence -- it's -- it's where the witness cannot testify directly about the fact to be proven but your presented with evidence of other facts, and then you're asked to draw reasonable inferences or conclusions about the fact to be proven. All of that legal language can be summed up in the following example.

You were with us all day yesterday. Chances are you just didn't have a chance, unless you live in the neighborhood, didn't have a chance to get home during lunch. Your mail was not there in the morning. It was, you know, the long weekend. It was the weekend so chances are you -- you obviously don't get any mail on Sunday, but no mail in the morning. Mail at the end of the day. You have no direct evidence you observed the letter carrier drop off the mail, but your reasonable inferences based on your experience that usually, if your house is like mine, the mail gets delivered between 10 and 2:30 just about every day. So there's no direct evidence that

you've observed the letter carrier. Circumstantial evidence. Wasn't there in the morning, was there in the evening, reasonable inference is that it was delivered.

There are, however, two rules to keep in mind about circumstantial evidence. The first is that you can draw inferences or conclusions only from facts that have been proven to you, and the second rule is that any inference or conclusion that you do draw must be reasonable and natural based on your common sense and life experience. Your common sense and life experience.

Now, you'll hear me use that phrase a couple more times before I'm done. Common sense and life experience.

What's an inference? Well, the law defines it as a permissible deduction you may make from evidence that you've accepted as believable. Inferences are things that you do every day. Excuse me. Little steps in reasoning. You take some known information, you apply your life experience to it, and then you draw a conclusion. You may draw an inference even if it isn't necessary or inescapable so long as it is reasonable and warranted by the evidence.

Let's talk about the credibility of witnesses. It's obviously your duty to decide disputed questions of fact. You have to determine which witnesses to believe and how much weight or importance to give their testimony. Give the testimony of each witness whatever degree of belief and

importance you Judge it's fairly entitled to receive. You are the sole judges, the sole judges of the credibility or believability of the witnesses. And if there are conflicts in their testimony, obviously this is an adversary process. Two sides to a story if you will. It is your function to resolve those conflicts and determine where the truth lies. You determine where the truth lies.

Now ,you can believe everything a witness says, you can believe most of it, you can believe half of it, you can believe some of it, you can believe a little bit of it, you can believe none of it. It's your call. It's entirely your call. In deciding whether to believe a witness and how much importance to give a witness's testimony, look at all the evidence, drawing upon your common sense and life experience.

Often as you know, and I know, what -- often it isn't what somebody says but how they say it to give you a clue to -- as to whether you should accept their version of an event as believable.

Now, some of the things you can consider are a witness's appearance, their demeanor on the witness stand, frankness or lack of frankness, whether the testimony is reasonable or unreasonable, probable or improbable. You can also take into account how good an opportunity the witness had to observe the facts about which he or she testifies, their degree of intelligence and whether their memory seems accurate. Those

are some of the tools to think about.

You may also consider a witness's motive for testifying, whether they display any bias in testifying, whether or not they have any interest in the outcome of the case.

Now, just because a witness has some interest in the outcome of a case doesn't mean that that witness -- witness isn't trying to tell you the truth as he or she recalls or believes it to be but -- but a witness's interest is a factor that you may consider with all the other factors in deciding issues of credibility.

Now, where there are discrepancies or inconsistencies in a witness testimony or between the testimony of different witnesses, that may or may not cause you to discredit such testimony. Why? People -- the folks that come in are not professional witnesses. They're laypeople. They get nervous, they're anxious, this is a very formal atmosphere. I don't know how you feel now, but I'm sure the first day or first hour, maybe you had butter -- had butterflies in your stomach, you were a little -- felt a little bit ill -- ill at ease, so too witnesses do often times, and sometimes they're just -- people just forget things or they get confused. Sometimes people remember things differently. Sometimes, however, people lie.

In weighing such discrepancies, you should consider whether they involve important facts or only minor details and whether

the discrepancies result from innocent lapses of memory or intentional falsehoods.

Now, there's one more point to make about witnesses, and that is expert witnesses. You heard from what expert witnesses, that's people who have -- that is -- those are, excuse me, people who have specialized training or experience in a particular field. Generally -- generally speaking in our Courts, whether it be a civil case or a criminal case, witnesses may testify only to facts within their personal knowledge. That is things they've personally seen or heard or felt.

In a small number of cases, or a variety of cases I should say, issues that arise that are beyond the can or the experience of -- of laypeople, and in those kinds of cases, we allow a person with specialized training or experience, called the expert witness, to testify, and they'll not only testify to facts, but they're also permitted to testify to their opinion and the reasons for those opinions on issues that are within the witness's field of expertise and are relevant and material to the case.

Now, because a particular witness has -- witness has specialized training and experience in that field, doesn't put that witness on a higher level or plain that any other witness, and treat the so called expert witness just like you would treat any other witness.

In other words, as with other witnesses, it's completely up to you to decide whether you accept the testimony of an expert witness including the opinions the witness gave. It's entirely also up to you decide whether you accept the facts upon which the expert relied and what conclusions, if any, that he -- you can draw from the expert's testimony.

You're free to reject the testimony and opinion of such a witness in whole or in part. If you determine that the witness's opinion is not based on sufficient education and experience or the testimony of the witness was motivated by some bias and interest in the outcome of the case, you may consider those factors as well.

You must also, as I've been explaining to you, keep firmly in mind that you alone, you alone, determine what the facts are. If you conclude that an expert's opinion isn't based on the facts as you find those facts to be, you may reject the testimony and opinion of the expert in whole or in part.

Remember that expert witnesses do not decide cases. Jurors do.

And in the final analysis, an expert witness is just like any other witness in the sense that you alone make the judgment about how much credibility and weight to give the expert's testimony and what conclusions to draw from that testimony.

Let's shift for a moment to the burden of proof.

In a civil case, as I've said before, Ms. Edwina Brooke-Petit has the burden of proving her case by a preponderance of the evidence. As I said before, this is a less strict standard than the standard in the criminal case where the prosecution or the government must prove its case beyond a reasonable doubt, that -- that proof standard does not apply here. It is not a standard of proof beyond a reasonable doubt.

In a civil case such as this, the plaintiff is not required to prove her case beyond a reasonable doubt. Instead, she meets her burden when she shows it to be fact -- truth -- true by a preponderance of the evidence, by a preponderance of the evidence. That means such evidence which, when compared and considered with any opposed to it, produces in your mind a belief that what is sought to be proven is more probably true than not true.

So when you think of the phase preponderance of the evidence, it's just legal language, mumbo jumbo if you will or -- to -- to mean more likely than not. We use all these fancy phrases, but we're trying to basically speak English here. More probably true than not true that -- that's what we're talking about.

Now, a matter has been proven by a preponderance of the evidence, meaning more likely than not, if you determine, after you've weighed all the evidence, the matter is more

probably true than not true. So if you were to put the credible evidence on the opposite sides of the scales of justice, for example, Ms. Edwina Brooke-Petit must prove enough evidence to skip those scales ever so slightly in her balance. If she fails to do this -- if she fails to do this, you must return a verdict for the defendant.

Now, those are the generic or general instructions that I give pretty much at the beginning of every civil case. I'm going to turn, if I may, to a discussion of what I call the case specific instructions on the breach of contract issue, on the home improvement contract issue, and on the Chapter 93A or consumer protection or unfair or deceptive acts statute.

As for the lat -- latter two theories of recovery for the plaintiff, meaning the home improvement statute or the Chapter 93A, let me tell you in a nutshell what I'm referring to.

Those are statutes. Statute is a law passed by the legislature, the general -- they call it the General Court in Massachusetts. All of those general laws are contained in this green set of books behind me, and just to give you a -- you -- you may see, for example, a District Attorney or -- or an Attorney General or a lawyer giving a press conference about some legal issue. Sometimes you'll see this green set of books behind them. These are the general laws of Massachusetts. They start with Chapter 1, they finish with Chapter 282.

Chapter 1, just to give you a -- a two second overview of this, deals with the powers of the government, the governors powers, the lieutenant governor, the general -- Attorney General, Auditor, and so forth, and then you span to chapter thirty-nine and forty and forty-one deals with cities and towns, taxation. I never really touch that. Chapters fifty-eight, nine, and sixty, down here, sometimes you'll hear well that's a Chapter 90 violation. Chapter 90 is the book. Chapter 90 on registry violations, moving violations. Hopefully none of you know anything about that, okay.

Public health violations are Chapter 111, public safety 143-148, and then you get the really juicy stuff, the criminal stuff, which is chapter -- Chapter 263 to 5 and the punishments are in 268. Just a -- a parenthetical note, when I was a kid, a lawyer was throwing out -- who was friendly with my dad, my dad was not a lawyer, but he -- he knew him and he gave him a book. It had the chapters -- the punishments on the laws, like the criminal laws, Chapter 282. Well, that's the one book out of all of them that he gave. I was only like fourteen, and I used to read that thing. How geeky can a kid be at fourteen to read those because they had all these weird laws like dueling, you know, and mayhem, and I just -- you know, I was just a kid. You know, I thought these -- this is a cool just to read this stuff, so that's how geeky I was as a kid, not -- not that I'm any changed or anything

but --

So in any event, those are -- those are the general laws, and so when I refer to the home improvement statute, that's where it's coming from is Chapter 142A of the general laws.

Chapter 93A deals with unfair or deceptive acts and practices, and again, that's from the general laws, but let me -- let me shift as I -- if I may to the first theory of recovery of the plaintiff and that is on breach of contract. But let me -- let me give you the introduction first of all.

I may refer to Ms. -- Ms. Brooke-Petit -- Petit as the plaintiff, and I'll refer to the defendant as Mr. Spagnuolo. My goal in -- in presenting these instructions is to ensure that you treat the parties in a fair and impartial way.

Ms. Brooke-Petit has brought this lawsuit against Mr. Spagnuolo on three different theories of recovery or causes of action or claims, whatever you want to call it. They also center on Mr. Spagnuolo's alleged failure to perform construction or remodeling services at her home at 131 Timberland Drive in Mashpee, Massachusetts.

Her claims include the following.

One, a breach of contract against Mr. Spagnuolo.

Two, a claim of -- for fraud against Mr. Spagnuolo.

And, three, a claim under Chapter 142A which is entitled the regulation of home improvement contractors.

We'll also be talking about Chapter 93A down the line, but

I don't want to address that at this point, so let me -- let me discuss with you the legal elements of these three claims, and the law requires that you as jurors apply the evidence as presented during the course of the trial.

Under the general guidelines that I presented to you, you must apply the law -- the evidence to the law and determine what -- whether Mr. Spagnuolo was liable to Ms. Brooke-Petit for damages resulting from the breach of contract and/or fraud arising out of the construction services provided to the plaintiff, Brooke-Petit, but Mr. Spagnuolo.

Now, once you've considered all of Ms. Brooke-Petit -- Petit's claims by apply the evidence presented in this case to the law, if you find Mr. Spagnuolo liable on any of these claims, you may award Ms. Brooke-Petit compensatory damages, and I'll define that a little more, but not punitive damages. Not punitive damages.

Let me shift to the subject of breach of contract. Breach of contract. Generally, a breach of contract is a failure to comply with one or more terms of a contract. A breach of contract is a failure to comply with one or more terms of the contract. In order to recover breach for contract, the non-breaching party, and that here is alleged to be Ms. Brooke-Petit, must have completely performed her obligations. Where one party to a contract has failed to perform her obligations, then as a matter of law, the other party is thereafter excused

from performing his contractual obligations.

Now, there are four elements that each of which must be proven to you. When you hear me say the word elements, think of this, that each element is -- is modified or define and you must find that element to be true by a preponderance of the elements -- evidence, in other words, more likely than not. So when I give you an element, and I'm going to say there's four elements to breach of contract, each one of those elements must be proven by -- to you to your satisfaction as the jury by a preponderance of the evidence, meaning more likely than not, so that standard of proof applies to each element. You get it.

There are four elements you must find.

One, there's a contract. Pretty simple.

Two, the -- I don't mean pretty simple that you can find that. I mean pretty simple in terms of what -- what you have to do, that there is a contract, and you have to find that.

Two, that the party performed its obligations under the contract or is excused from performance. So number two is performance of the obligations or excused from performance.

Three, that the other party breached the contract.

And, four, that the non-breaching party suffered damages as a result of the breach of contract.

So four things. One, breach of contract.

Two, that the party performed its obligations under the

contract or was excused from performing.

Three, the other party breached the contract.

And, four, that the non-breaching party suffered damages or harms or injuries or financial loss, whatever you want to call it. Damages is a -- kind of a vague word we use to mean like financial losses or harm or injury, some -- sometimes they refer to them as injury, but there's no -- no physical injury here, no personal injury like in a motor vehicle car case, a motor vehicle accident. It's -- we're talking about financial loss is what we're really talking about. So those are the four elements.

Now, in Massachusetts let me tell you that there is an implied covenant of good faith and fair dealing between parties to a contract. It's an implied covenant of good faith and fair dealing to every -- every contract. The implied covenant of good faith, and fair dealing means that neither party may do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.

If the plaintiff has failed to act in good faith and has breached its implied covenant of good faith and fair dealing, the plaintiff cannot recover for subsequent breach of contract by the defendant.

So let's turn to the first element. Was there a contract? You must answer this question as to whether this contract or

agreement between Ms. Brooke-Petit and Mr. Spagnuolo as to the construction -- construction or remodeling project or services at 131 Timberlane Drive in Mashpee.

Now, what's a contract? A contract exists when the parties agree to the terms and conditions of mutual promises. It exists when the parties agree to the terms and conditions of mutual promises.

By the way, let me just add parenthetically, remember when we were kids, you'd -- you'd see -- hear these comedy routines, will the party of the first part and the party of the second part and all that stuff, actually that -- that's like about a hundred years ago. I still think that we're going to see a contract with those terms, but we don't -- we don't do that in case any of you are waiting for me to start talking that way.

So a contract exists when the parties agree to the terms and conditions of mutual promises. The contract may be based on oral or written promises. This is often referred to -- to as a meeting of the minds, a meeting of the minds.

Mutuality means that the parties communicated their agreement to the terms and conditions in the same sense and at the same -- at -- at the time of the alleged contract.

There's no contract formed if only one party intends to be bound or if the parties intend to be bound but only at a later date. Agreement can be shown by a written or spoken words,

written or spoken words, or by some act or omission which is intended to communicate agreement, and which indicates to the other party that it is intended to communicate agreement. The law presumes that a person intends the natural and probable consequences of his or her acts.

An unexpressed intent to be bound or contract doesn't create a binding contract.

In order to determine whether a binding contract existed in this case, decide whether the parties intended to be agreed by the contract's terms as of the time of the contract.

Now, the contract terms, that's number two. If you determine that a binding contract was formed, you must determine the terms of the contract. Now, the terms of the contract are those to which the parties mutually assented with reasonable certainty.

Let's move to the subject of the time for performance. When a contract doesn't specify the time for performance, a party has a reasonable period of time in which to perform, a reasonable period of which -- in -- of time within which to perform.

Let's talk about performance. When a contract requires the defendant to render performance to the satisfaction of the plaintiff, the standard of satisfaction is whether a reasonable person would be satisfied in view of all the circumstances, whether a reasonable person would be satisfied

in view of all the circumstances.

Let's talk about performance by the defendant. There can be no breach of contract where the defendant has fully performed. Where a plaintiff has accepted the benefit of the defendant's full performance, the plaintiff cannot be heard to complain about the performance.

Where a person or entity contracts to perform services for another, it implicitly promises to perform the services in a reasonably diligent, skillful, workmanlike, and adequate manner. So where a person contracts to perform services for somebody else, it implicitly promises to perform the services in a reasonably diligent, skillful, workmanlike, and adequate manner. The contract may be found to be breached if it was performed negligently.

A party cannot refuse to perform a contract in anticipation of a breach by the other party to a contract.

Let's talk about full performance. To cover -- to recover for a full -- for a breach of contract, a plaintiff, and here that's Ms. Brooke-Petit, must establish her full and complete performance of all obligations under the contract. However, a material breach of the contract by one party excuses further performance by the non-breaching party.

A material breach of the contract by one party excuses further performance by the non-breaching party.

If you find that the plaintiff, Ms. Brooke-Petit, had an

If the plaintiff has not proven that the defendant breached the contract, then you will not consider the issue of damages.

If the defendant, Mr. Spagnuolo, did breach the contract, you must then decide the amount of the plaintiff's damages, if any.

Before the plaintiff can recover damages under any theory of recovery, she must prove the defendant's breach caused those damages.

Now, the basic principle of contract damages is that the injured party should be put in as good a position as if the other party had fully performed its obligations under the contract. So the basic principle is to put the person in as good a position as if the other party had fully performed its obligations under the contract.

In order to recover damages against Mr. Spagnuolo, Ms. Brooke-Petit must demonstrate that the damages complained of were caused by Mr. Spagnuolo's conduct. Now, if the damages were caused by Ms. Petit or by somebody other than the defendant, the plaintiff, Ms. Petit, is not -- Brooke-Petit is not entitled to damages from Mr. Spagnuolo.

Now, Ms. Brooke-Petit is entitled to recover damages sufficient to give her the benefit of the contract bargain as long as those damages are reasonably proven. In other words, she's entitled to those damage that would put her in a position to obtain what she bargained to obtain, such as

compensation in money that can be computed by rational methods upon a firm factual basis.

Now, an injured party, Ms. Brooke-Petit here is alleged to have been that party, is entitled to recover both general and specific damages. What are general damages? Those which flow according to common understanding as the natural and probable consequence of a breach.

Consequential damages result from special circumstances known or presumed to have been known to the parties.

Now, in a construction contract, the measure of damages is where the builder fails to complete a construction job, and it should be measured by the difference between the value of the job -- of the work in disrepair and the value of the subject structure if satisfactorily completed according to the contract. So the measure of damages awarded in a construction contract should be, where the builder fails to complete a construction job should be measured by the difference between the value of the -- value of the work in disrepair and the value of the subject structure if satisfactorily completed according to the contract.

Now, let's move on to a subject, the subject of fraud. So we've completed our discussion on breach of contract. We move on to the allegation of fraud. And what are the elements of fraud? In this case, Ms. Brooke-Petit claims the defendant, Spagnuolo, misrepresented important facts including, but not

limited to, the cost to do the construction remodeling services at her home at Mashpee, the materials to be used, the subcontractor work, the payments made to them, and the actual construction or remodeling work done on the plaintiff's property which the plaintiff says she would not have done if she had known the true state of affairs. As a result, Ms. Brooke-Petit claims that she was financially harmed.

Mr. Spagnuolo, for his part, denies that he misrepresented any important fact to Ms. Brooke-Petit.

Ms. Brooke-Petit may recover money damages from Mr. Spagnuolo if and only if she proves by a fair preponderance of the evidence, meaning again more likely than not by credible evidence, the following five factors. So five elements to a fraud claim. Five elements to a fraud claim.

One, that Mr. Spagnuolo made a false statement or statements to the plaintiff, and that statement or -- or those statements concerned some fact that a reasonable person would consider important to the decision that the plaintiff was about to make. So fact number -- I mean element number one is that the defendant, Mr. Spagnuolo, made a false statement or statements to the plaintiff -- plaintiff and that statement or those statements concerned some fact that a reasonable person would consider important to the -- to the decision that Ms. Brooke-Petit was about to make.

Now what is a -- a material fact? A material fact -- now,

you'll hear me -- hear me use -- hear me use that word material a couple more times. A material -- material fact is a fact that a reasonable person would attach importance to in determining his or her choice of action in the transaction. A fact is material if a reasonable person would attach importance to it in determining his or her choice of action in the transaction in question.

Two, the second element that again -- again must be proven by a preponderance of the evidence is that when Mr. Spagnuolo made the statement, the defendant either knew that the statement was false or recklessly made the statement by willfully disregarding its truth or falsity. So two is that when Mr. Spagnuolo allegedly made the statement, he knew either that the statement was false or he recklessly made the statement by willfully disregarding its truth or falsity.

Third element, Mr. Spagnuolo made the false statement with the intention that the plaintiff would rely on that statement in making her decision. So three is that -- it is called reliance. That's where the -- Mr. Spagnuolo allegedly made the false statement with the intention that Ms. Brooke-Petit would rely on that statement in making her decision.

Four, that in making her decision, Ms. Brooke-Petit did in fact rely upon the defendant's statement as true and that all -- her reliance was reasonable under the circumstances.

And, five, that the plaintiff suffered some financial loss

as a result of relying on the defendant's false statement.

So usually the -- the last element in each one of these theories of recovery is that you have to show damages, and they have to -- financial damages, and they have to be related to the -- to the actions of the defendant. That's always -- almost always last -- the last element. I think it is the last element.

So if the plaintiff has proven these five elements by a preponderance of the evidence, your verdict will be for the plaintiff, and you must then go on to determine the amount of money damages to be awarded her.

If the plaintiff has failed to prove any one of these five elements, then your verdict must be for the defendant.

Now, before I move further -- off of discussion for that, does anybody want me to define any of these elements again? I -- there's no harm here. No -- no harm, no foul we used to say. No? Okay.

All right. So let's talk about a false statement -- anybody? No. Okay.

False statement of fact, the defendant can be held responsible for an intentional or a reckless misrepresentation about an existing fact. A fact, as opposed to an opinion, estimate, or intention, is a statement whose truth or falsity is capable of being determined with certainty. Generally, Mr. Spagnuolo cannot be held responsible for a statement about a

future event, although there is an exception to that rule if the defendant had greater expertise about a particular future -- future event that was being discussed.

Mr. Spagnuolo can be held responsible for a misrepresentation about his opinion, his estimate or intention, but only if he intentionally misrepresented his opinion, estimate or intention.

Let's talk about false statements of facts or opinions. Fraud may be perpetrated by an implied as well as by an expressed representation. Fraud may be perpetrated by an implied as well as by an expressed interpretation -- representation, excuse me. A statement that in form is one of opinion in some circumstances may be reasonably interpreted by the recipient or listener to imply that the maker of the statement knows facts that would justify the opinion. In this case, it's for you as the jury to determine whether the statement made by Mr. Spagnuolo was one of fact or opinion.

Now, let's talk about false statements and the nature of half-truths and silence or conduct or statements calculated to mislead. Mr. Spagnuolo can be held responsible not only for outright untrue statements but also for giving misleading, partial information or for telling half-truths. The defendant cannot, however, be held responsible to the plaintiff based solely on his silence about a matter about which he wasn't asked.

Now, although Mr. Spagnuolo has -- was under no duty to volunteer information, if -- if he spoke on a given point, either voluntarily or at the plaintiff's request, he must have spent -- then spoken honestly and must have divulged all material facts about which he knew that bore upon the subject.

Additionally, deception need not be direct to come within the reach of the law. If you find that the defendant's statements and conduct combined were calculated to mislead the plaintiff and that they did in fact mislead her and that the plaintiff was acting reasonably, then this is enough to constitute intentional misrepresentation.

Let's shift for a moment to talk about to known -- knowledge of falsity and willful disregard of truth or falsity. Mr. Spagnuolo is liable if he made a false statement of fact knowing it to be false. Likewise, if he made an unqualified statement about facts, the truth or falsity of which he could've determined with certainty and gave Ms. Brooke-Petit -- Brooke-Petit the reasonable impression that he was speaking of his knowledge, than Mr. Petit -- Mr. Spagnuolo is not excused from liability if he didn't in fact know whether the statement was true or false. The law regards such willful disregard of the facts as equivalent to an intentional misrepresentation. Actual intent to deceive need not be proven.

Now, the plaintiff must prove that the defendant intended

that the plaintiff would rely on the misrepresentation and that reliance, as I said before, must be reasonable. So what are we talking about? As I say, plaintiff must prove that she relied upon his misrepresentation and misrepresentation is material. If it is shown that the misrepresentation was one of the principle grounds, although not necessarily the sole ground or only ground, that caused Ms. Brooke-Petit to take the particular action that the defendant intended her to take as a result of the representations and that otherwise, Ms. Brooke Petit wouldn't have taken such action.

Furthermore, Ms. Brooke-Petit may recover only if her reliance on the defendant's statement was reasonable and justifiable under the circumstances. Ordinarily, Ms. Brooke-Petit, as a plaintiff, is not required to investigate the truth of assertions that were made to her. The recipient of a fraudulent misrepresentation of fact is ordinarily justified in relying on its truth, although she might have ascertained that the falsity of the representation had she made an investigation.

If the defendant's representations were such so as to induce the plaintiff not to undertake an independent in -- examination of the pertinent facts, lulling her into placing confidence into his insurances, then her failure to ascertain the truth through investigation doesn't preclude recovery. This is so even though the defendant, Mr. Spagnuolo's,

representations were not conspicuously false.

And I remind you that if you do reach the issue of -- of -- of damages in this -- in this regard on the fraud elements just as you did on -- on -- just as you're going to entertain that exercise of looking at each of the elements and the breach of contract, remember there's five elements, each of which have to be proven by a preponderance of the evidence in the fraud area. You're not to engage in punitive damages, but you are to award the plaintiff an amount of money that's the difference between the value of the work in disrepair and as misrepresented by the defendant and the value of the structure if satisfactorily completed according to the agreement and/or the misrepresentations not having been made by the defendant.

In other words, if you reach the issue of damages, award Ms. Brooke-Petit a sufficient amount of money to put her in the position that she would've been in if the situation had been as represented by the plaintiff -- by the defendant.

In other words, you award her the benefit of the bargain or the benefit of the contract with the defendant if those damages are proven with reasonable certainty, and mathematical precision is not required.

If the misrepresentation caused the plaintiff incur -- to incur any additional expenses that were reasonably foreseeable as a result of Mr. Spagnuolo's misrepresentation then you're to award Ms. Brooke-Petit an additional amount of money that

will compensate her for those additional expenses she incurred.

So we've now covered the breach of contract and the fraud claims. Let me move onto the sub -- to the subject of the home improvement contractor statute. That is Chapter 142A of the general laws.

Now, what are -- what kind of properties are governed by this statute? Well, a homeowner's house was -- let me -- let's -- let's define owner under the statute. We are talking about the homeowners -- the homeowner. So what do we mean by the owner? Well, owner is defined under the law as any homeowner of a preexisting owner occupied building containing at least one or not more than four dwelling units who orders, contracts, or purchases the services of a contractor or subcontractor. So what is an owner? It's defined under the statute as any homeowner of a preexisting owner occupied building containing at least one or not more than four dwelling units who orders or contracts or purchases the services from a con -- subcontractor or contractor.

Now, the case law, this -- this is the statute. It's right here. That's the statute. Chapter 142A.

And I've just read to you the definition right from -- well, excerpted from -- from section one in that -- chapter -- section one of that all define -- defines different words including the word owner. So there was a case that further

delineated or defined what the word homeowner means. What is a homeowner?

Well, a homeowner's house was preexisting, owner occupied building under the statute even though the homeowner never lived in that house where the remodeling was performed where the house was a preexisting building and the owner brought it to -- bought it to live in. All right? So that is not defined in the statute that way, but the case -- a case came up to the Supreme Judicial Court, this one -- this -- it's in this one here. A case came up to -- actually, it came up to the Appeals Court and then they said well do you have to -- do you have to immediate live in it? Do you have to be living in it at the time? And they said no, you don't have to be living in it at the time. A homeowner's house was a preexisting owner occupied building under the statute although the homeowner never -- homeowner never lived in the house where the remodeling was performed where the house was a preexisting building, what it a preexisting building, and the owner bought it to live in. Okay? So that defines homeowner for -- owner for you.

Chapter 142A, section two requires that in every agreement to perform residential contracting services for an amount in excess of a thousand dollars has to be in writing and contain the following relevant information.

I'm going to -- I'm going to go through these rather

speedily, not speedily but expeditiously.

The first thing is the identity of the people, their full names, their socials, addresses, names of the contractor, and so forth, and the date that the contract was executed between the parties. That's fairly obvious. It identifies the people, the dates, and the -- the names of the people and their addresses.

The next thing is the dates under which the contract is scheduled to perform and the date that it is supposed to be completed substantially.

The third thing is a time schedule of payments to be made under the contract and the amount of each payment stated in dollars including finance charges and any deposit that's required under the contract to be paid in advancement of the commencement of work shall -- shall not exceed the greater of one third of the total contract price or the actual cost of any materials or equipment of a special order or custom made nature which must be ordered in advance of the project in order to assure that the project will proceed on schedule.

No final payments shall be demanded until the contract is completed to the satisfaction of the parties. There also need be -- needs to be a clear and conspicuous notice appearing on the contract that all contractors or subcontractors must be registered and that any inquiry about a contractor or subcontractor relating to registration should be directed to

the administrator. We're talking about in this -- in this instance, the chief administrator of the board of building regulations of the executive office of state or executive office of public safety.

And also, there should be a registration number of the sub or the contractor on the contract.

All this have to be in ten point bold type or larger directly above the space provided for the signature.

Chapter 142A, Section 17 prohibits the following acts by contractors. It prohibits the following acts by contractors.

One, abandoning or failing to perform without justification any contract or project engaged -- engaged in or in undertaking by a registered contractor or subcontractor or deviating from or disregarding plans or specs in any material respect without the consent of the contractor -- of the owner, excuse me.

Two, failing to credit to the owner any payment that have been made to the contractor in connection with a residential contract.

Three, making any material misrepresentation in the procurement of the contract or making any false promise of a character likely to influence, persuade, or induce the contract.

And lastly, fourth, violating any building law of the Commonwealth or any of its cities or towns.

So there's four elements that -- four prohibited acts by the -- by the home improvement statute.

One is abandoning or failing to perform without justification any contract or project.

Two is failing to credit payments that have been made to the owner by the -- to the contractor by the owner.

Three is making any material misrepresentation is the procurement of the contract or making any false promise of contract -- of a character likely to influence or persuade or induce the contract.

And, four, is the violation -- any violation of the building code of the laws of the Commonwealth or any city or town.

Now, a violation of any of these provisions shall constitute an unfair or deceptive act under the provisions of Chapter 93A, and I'm going to -- in other words, it -- it flips you to the next inquiry. The next line of inquiry is onto Chapter 93A, and we'll talk about that in a moment. But let me repeat, a violation of any of those provisions shall constitute an unfair or deceptive act under the provisions of Chapter 93A.

If you find that Chapter 142A was violated by Mr. Spagnuolo, then you must find that there was a violation of Chapter 93A.

Now, as far as what you do with that violation, that's

another level of inquiry, and we'll talk about that in a moment, but only if you find that there was a violation of the home improvement contract, you must find that there was a violation of Chapter 93A, and I emphasize thereafter. Entirely, it's up to you as to what you do if you do find a violation of the home improvement contractor to translating to what to do on the 93A, and I'll -- I'll go through that in a moment.

So now we shift to the last subject area and that is the unfair or deceptive acts or practices. And before we do that, we're going to take a -- a one minute break. Does anybody need any water? I'm getting a little dry here.

We're on the five yard line, so -- with Tom Brady. Not me, but Tom Brady, or what's the guy from Minnesota -- Minnesota -- no, the guy who retires all the time.

UNIDENTIFIED ATTORNEY: Brett Favre.

THE COURT: Brett Favre. That's a guy that doesn't know when to hang up the cleats, huh? He's retired five times in the last whatever.

All right. So Chapter 93A which is the Mass -- called the Massachusetts Consumer Protection Act. It outlaws certain acts, unfair acts or -- of competition or unfair -- unfair methods of competition or unfair and deceptive acts or practices in the conduct of trade or commerce.

Now, what does trade or commerce mean? It means the

advertising, offering for sale or rent or lease to sale, rent or lease of services and/or property or any other thing of value. So it's the -- the sale or rent or lease of any services or any other property.

To show a violation of Chapter 93A, Section 9, Ms. Brooke-Petit must prove, one, that she's been injured by some act or practice of Mr. Spagnuolo.

Two, that the act or practice was done in the conduct of any trade or commerce.

Three, the act or practice is unfair or deceptive.

And, four, that at least thirty days before the filing of the suit, she sent a demand letter in writing for relief that identified herself and reasonably described the unfair or deceptive act or practice and the injury, financial injury, that she suffered.

So let me -- let me reiterate. There are four elements that must be proven under a Chapter 93A violation that she has been injured by some act or practice of the defendant.

Two, that the act or practice was done in the conduct of any trade or commerce.

Three, that the act or practice is deceptive or unfair.

And, four, that she issued a thirty -- a pre suit demand at least thirty days before the lawsuit identifying in writing to the defendant the relief that she requests, identifying herself and reasonably describing the unfair or deceptive act

or practice and the injuries suffered.

Now, if the plaintiff, Ms. Brooke-Petit, wishes to recover more than the minimum of twenty-five dollars under the statute, she must also prove the amount of damages that proximately resulted from the defendant's unfair or deceptive act or -- or practice. If she wishes to recover double or triple damages, double or triple damages, the plaintiff must additionally prove either that the act or practice was a willful or knowing violation of the law or that Mr. Spagnuolo's refusal to grant relief on demand or after demand was made in bad faith with the knowledge or reason to know that the act or practice complained of violated the law.

So if the plaintiff wishes to recover double or treble damages -- remember I talked to you about compensatory damages earlier? This is a little different. This is the double or treble damages provision of Chapter 93A. If the plaintiff wishes to recover double or treble damages, the plaintiff must additionally prove either that the act or practice was a willful or knowing violation of the law or that the defendant, Mr. Spagnuolo's, refusal to grant relief after the written demand was made was made in bad faith with knowledge or reason to know that the act or complaint -- or practice complained of violated the law.

Now, I'm going to present to you the law of -- on each of these elements.

First, let's talk about the demand letter. Somebody has to send a letter in -- in -- just to kind of put people on notice and find out what their reaction is. Maybe they can resolve it. I don't -- you know, I don't know.

The first element that the plaintiff must prove by a preponderance of the elements is that she mailed or delivered an adequate demand letter to the defendant at least thirty days before the action. This action was known -- was filed on November 20th, 2006. So it has to be filed before that -- thirty days before that date of November 20th, 2006.

Now, what does adequate mean? It means that it identifies the plaintiff as the claimant. It reasonably describes the act -- unfair or deceptive act or practice. It reasonably describes this injury. It specifies what the relief is sought, and it includes at least one of the following indication that the plaintiff is seeking relief under the Chapter 93A, it refers to Chapter 93A, it refers to the Consumer Protection Act, it asserts that Ms. Brooke -- Brooke-Petit's rights as a consumer have been violated, it asserts that the plaintiff was pursue -- will pursue multiple damages and attorney's fees should be -- should -- if relief is award -- is denied, should the -- if the defendant fails to offer relief, and finally, it con -- must contain an assertion that the defendant acted in an unfair or deceptive manner.

Now, as I said before, Ms. Brooke -- Brooke-Petit must

prove by a preponderance of the evidence, meaning more likely than not, Mr. Spagnuolo was engaged in truth to commerce in his dealings with her. That -- in other words, that it took place in a business context. Trade or commerce includes, as I said before, the offering of services. This definition is rather open ended.

Plaintiff is claiming in her dealings with the -- Mr. Spagnuolo that she participated in a private, non-professional basis. The plaintiff has the burden of proving by a preponderance of the evidence that she was a private, non-person -- non-professional person such as a consumer or that although she was a business person, in the context of this case, the defendant, Mr. Spagnuolo, dealings with her did not occur in connection with her business.

The term unfair or deceptive is un -- is broad and flexible and it is intentionally so defined. Use your common sense.

Based on the jury instructions that I'm now giving you, consider whether Mr. Spagnuolo took unfair advantage of Ms. Brooke-Petit and whether she was defenseless as a consumer. Consider the defendant's conduct in light of all the circumstances.

Now, a deceptive act or practice is one simply that had the capacity to deceive. An act or practice is deceptive if were -- if it could reasonably cause a person to act differently from the -- from the way the person, meaning the plaintiff

here, would act if she had known the truth. It -- it includes any communication made with the intent to deceive another person; however, an intent to deceive is not always necessary. A negligent or careless misrepresentation of fact, the truth of which was reasonably capable of ascertainment may also be a deceptive act or practice.

To help you decide whether an act or practice is unfair, ask yourself three simple questions. Unfair question -- three simple questions.

First, does it fall in the -- some established concept of unfairness? For something to be unfair, it doesn't need to violate the law or some government regulation, but that is if there is such a violation, something for you to consider, but not every illegal act is unfair.

Second, ask yourself whether the defendant's act or practice was immoral or unethical, oppressive, unscrupulous, or otherwise unconscionable.

Remember that you must decide this question in the context of the commercial -- context of the commercial marketplace where, on the one hand, people don't expect to be cheated, but on the other hand, they should expect to deal with each other prudently and not at -- and -- and at arm's length, prudently and at arm's length.

Third, consider whether the defendant, Mr. Spagnuolo's, act or practice would cause substantially injure -- substantial

injury to the public or consumers in general.

Now, if -- if Mr. Spagnuolo's actions were unfair or deceptive, then go on to decide whether Mr. Spagnuolo willingly or knowingly committed that unfair or deceptive act or practice.

Ms. Brooke-Petit has the burden of proving by a fair preponderance of the evidence that the defendant had a sub -- subjectively culpable state of mind.

Willful or knowing requires something more than mere negligence.

An unfair or deceptive statement is willful if the speaker represents a fact to be true without knowing whether it is true or not, and with false -- and with reckless disregard for whether it's true or not.

An unfair or deceptive statement is knowing if the speaker represents the fact to be true while knowing that it's not true.

An unfair or deceptive act or practice is willful if the person intends to commit an unfair or deceptive act. An unfair or deceptive act is knowing if the person, whatever his or her intent, knows that by doing so, he's committing an unfair or deceptive act.

Let's move on to the subject of injury, then damages, and then we're done.

If the defendant, Mr. Spagnuolo, committed an unfair or

deceptive act or practice, you must then determine whether Ms. Brooke-Petit was injured or damaged, more properly damaged is the word, by the defendant, Spagnuolo's, actions.

In deciding whether Ms. Brooke-Petit was injured, you may consider whether the plaintiff sustained any loss of money or property or -- or emotional upset as a result of the defendant's actions.

While the plaintiff need not prove actual reliance upon a misrepresentation by Mr. Spagnuolo, in order to recover damages, she must prove a causal connection between the deception and the loss and that the loss was foreseeable as a result of the deception.

Finally, if Mr. Brooke-Petit -- excuse me. If Mr. Spagnuolo engaged in an unfair method of competition or used an unfair or deceptive act or practice, Ms. Brooke-Petit has the right to be compensated for any loss or property -- a loss of money or property she suffered in reaching your decision and determining what loss she suffered, the -- the term money means money. It doesn't mean time or anything else. Have in mind the term property means the kind of property that's purchased or leased, not intangible such as the right to -- a sense of security or peace of mind or personal liberty. Those things don't -- don't -- don't apply.

What you're deciding at this point is what amount of money will fairly and fully compensate Ms. Brooke-Petit for the

losses that Mr. -- Ms. Brooke-Petit sustained allegedly as a result of Mr. Spagnuolo's conduct.

Now, if you find that Mr. Spagnuolo committed an unfair or deceptive act or practice willfully or knowingly, then Ms. Brooke-Petit is entitled to an award of up to three times, but no less than two times, the actual damages you've determine the plaintiff, Ms. Petit -- Ms. Brooke-Petit to have sustained. Let me repeat that. If you find that Mr. Spagnuolo has committed an unfair and deceptive act or practice willfully or knowingly, then the plaintiff is entitled to an award of up to three times but no less than two times the actual damages you have determined the plaintiff, Ms. Brooke-Petit, to have sustained.

You must, therefore, determine whether the damage caused by Mr. Spagnuolo's unfair or deceptive act or practice should be doubled or tripled. Multiple damages are designed to impose a penalty on a defendant. The purpose of multiple -- multiple damages is to -- is to deter callous and intentional violations of the law and to promote prelitigation settlements by making it unprofitable for a defendant to ignore a plaintiff's request for relief. Multiple damages are not awarded to compensate particular harmed individuals.

In determining whether the actual damages should be doubled or tripled, take into consideration all of the relevant circumstances including the character and degree of the wrong

as shown by the evidence, the necessity of preventing similar wrongs, and the defendant's degree of culpability.

Let me go through you -- with you, if I may, the jury verdict slip, and if I could have counsel -- Martha, if you wouldn't mind giving these to Joanne and counsel to -- these -- this is -- these are two to counsel and these go to the jury.

Thank you.

I'm going to hand out the special jury verdict slip form.

All right. Do we have -- by the way, do we have -- do we have a foreperson?

THE CLERK: Yes, your Honor.

THE COURT: Who is that?

THE CLERK: Juror in seat number thirteen, Mr. Shaughnessy.

THE COURT: All right. Mr. Shaughnessey, would you mind taking that obligation on you?

JUROR NUMBER: No problem.

THE COURT: All right. Thank you. There's special pay in it for you. You can have an extra sandwich or something, I don't know.

All right. So the just -- special jury verdict slip, let me -- let me run through this with you.

Did the plaintiff and the defendant enter into a or -- an oral or a written agreement or contract?

Does everybody have one? No, not yet. I'm sorry.

Okay. All right.

Did the plaintiff and defendant enter into an oral or written agreement or contract -- slash contract pursuant to which the defendant agreed to provide or require -- provide remodeling construction services, materials, and supplies, and the plaintiff agreed to pay for those services as they were provided? Yes or no. If you answer yes, then you go onto question two. If you answer no, then go to question three. All of these directions done, they -- they -- they channel you into certain directions based on your decision.

Now, I'm going to tell you that in each one of these questions that you're going to be -- be addressing must be answered by -- by ten of the twelve people satisfact -- in -- in -- in -- to the same answer. In other words, you -- you need -- there are fourteen of you. We're going to take out two of you as -- as alternates in a few moments, so twelve of you will be sitting as jurors. Two unfortunately will be selected as alternates, but you'd be surprised the number of times that alternates come into the breach. Probably one out of every four or five cases, the alternates -- somebody gets sick, they have to go home, elderly parents, sick kids, they get sick themselves, and so we have to throw an alternate into the -- into the fray.

So alternates, stand by.

So in any event, let me -- let me -- that's question -- so

any of these questions that you're going to be -- every -- every of these questions that you're going to be allowed -- asked to address must be answered in -- in -- in -- in the tune of ten people agreement. The ten people that constitute that number can change from each question. It doesn't have to be the same ten people, but it has to be the magic number of ten.

So question two is did the -- did the defendant breach the oral or written agreement or contract with the plaintiff by failing to provide the services contracted for or by over -- over charging the plaintiff?

So then you go on to question three, fraud, and that's -- remember I defined fraud for you? Did the defendant commit fraud, deceit, and or misrepresentation by any means in connection with the services provided?

Now, if you answer that yes, you go onto four. If you answer it no, then you go on to question six because roman numeral three is the Chapter 142A section that we talked about. That's the home improvement contract, so this is following the instructions that I went to. First was the contract issue, roman numeral one, two is the fraud issue, and the three is the home improvement contract.

So did the defendant, in question four, violate Chapter 142A regarding the regulation of home improvement contractors by any means in connection with the services provided by the

defendant to the plaintiff?

Now, if you answer that yes, you go on to the five. If you answer it no, then you jump to six.

If you answer five yes, then you ask -- then you answer what amount of money would fully and -- and fairly compensate the plaintiff for any injury or damage she sustained because of the defendant's conduct based on your answers to question one through four.

Let me just take a look at that.

It's not correct.

Yeah, I think that -- that has to be modified. If you answer the questions one -- no, we'll -- we'll go through that. I think that direction has to be changed a little bit, doesn't it?

UNIDENTIFIED ATTORNEY: Yes.

UNIDENTIFIED ATTORNEY: Yes, your Honor. I was just looking at it, and it --

THE COURT: Yeah, I -- I just caught it myself. If -- if -- so if your answer to question number -- let's see. How do we modify that?

UNIDENTIFIED ATTORNEY: I think, your Honor, there's two on page two that need to be -- the references need to be changed.

THE COURT: Two. All right. Well, you know, we'll -- we'll go through those directions in a few minutes, but let me just get the questions, and then we'll correct it, and I -- I -- I

thank you. It's always good to have another set of eyes.

So what amount of money would fully and fairly compensate the plaintiff for any injury or damage she sustained because of the defendant's conduct based on your answers to one through four, but that -- that we're going to have to -- we're going to have to give you different instructions.

Now, we go on to roman numeral four and -- on Chapter 93A which is the unfair violation -- unfair or deceptive act or practice.

If your answer to number five is yes, that's the one of home improvement, that's going to be the one on home improvement contract. It's going to be actually question four -- we'll correct this for you -- you must find that there was a violation of General Laws Chapter 93A, and then you may award the plaintiff double or triple the amount awarded to the plaintiff in response to question five.

Therefore, what amount of money do you award the plaintiff as a result of the violation of the home improvement contract of which amount can either be a doubling or trebling -- or tripling of the amount awarded.

Then, we go on to the Chapter 93A. Did the plaintiff send an adequate demand letter to the defendant at least thirty days before November 20th, 2006? If your answer is yes to A, then you go on to 7B. If your answer is no, then you stop, notify the Court Officer, sign the jury verdict slip, and

return to the courtroom.

7B is was the defendant engaged in trade or commerce when he entered into the contract with the plaintiff, etcetera, etcetera, etcetera.

C, did the -- did the defendant act unfairly or deceptively when he entered into that agreement with the plaintiff?

And then D, did the act -- unfair or deceptive acts that the defendant engaged in cause injury or -- or loss to the plaintiff?

If you find a violation of Chapter 93A, you may award the plaintiff double or treble the amounts awarded to the plaintiff in response to question five. And we may adjust that.

What amount of money do you award to the plaintiff as a result of the defendant's violation of Chapter 93A? And that amount can be either double or triple.

Now, what we're going to do is I -- I see a couple of things that we need to correct on -- on the directions of these questions and the question numbers that I referred to in the directions.

So that's the general thrust of what we -- we need you to decide. It's long. It's not terribly complicated, but spend your time -- take your time on these things. It's not a rush to judgment. As these -- as these -- this case, as you well know, has taken several years to get to this point, and it's

no reflection on the parties by any stretch of the imagination. It's just a reflection that the Courts really need to do their jobs better.

So it's not their faults, but the point is that we've -- we've spent several days doing this. We'd like you to have a full and measured discussion of the issues.

Along those lines, let me tell you that everybody has a voice, and everyone has a vote including the foreperson, so it's not like you break ties or anything like that. Obviously, there's twelve people. There's not -- probably not going to be any ties, but --

Who are our alternates, Martha?

We'll have Lynn.

THE CLERK: Want Lynn to draw?

THE COURT: Lynn draws.

THE CLERK: You draw.

THE COURT: You just need to select two.

THE CLERK: The juror in seat number four, Ms. Colden or Ms. Colben, and the juror in seat number nine, Tescassi.

Thank you.

THE COURT: All right. So the -- those -- they will be alternate jurors, and just stand by. We'll put you in a separate room, and you can just sit -- well, we'll get you some lunch in any event.

Did lunch come yet?

THE CLERK: No. 11:30 it should --

THE COURT: Okay. All right.

We -- we have -- we've got lunch coming in for you any minute, so you can do that.

Let me -- let me see counsel at sidebar, and then we'll -- and in the meantime, what I'm going to ask you to do is if you wouldn't mind just -- wait -- wait, please.

Would -- would you mind -- no, the lawyers are okay.

Joanne, would you mind collecting these from the jurors so that we can correct these -- these citations to the different questions.

(DISCUSSION AT SIDEBAR)

THE COURT: (Inaudible at 01:56:15, low audio at sidebar.)

On the jury instructions, any issues?

UNIDENTIFIED ATTORNEY: I -- I do have one, your Honor.

THE COURT: Yeah.

UNIDENTIFIED ATTORNEY: And -- and I mean this very respectfully --

THE COURT: Yeah, that's -- it's fine. Respect or none, the trial (inaudible at 01:56:35, low audio at sidebar.)

One thing?

UNIDENTIFIED ATTORNEY: Yes.

THE COURT: Okay.

UNIDENTIFIED ATTORNEY: When you --

THE COURT: (Inaudible at 01:56:49, low audio at sidebar.)

UNIDENTIFIED ATTORNEY: (Inaudible at 01:56:51, low audio at sidebar.)

UNIDENTIFIED ATTORNEY: Well, the -- the important thing is -- is that, you know, it does -- it does give you the benefit of (inaudible at 01:57:25, low audio at sidebar.)

THE COURT: Well, where -- where does it say that it has to be (inaudible at 01:59:20, low audio at sidebar.)

UNIDENTIFIED ATTORNEY: (Inaudible at 01:58:31, low audio at sidebar.)

THE COURT: The facts of that case.

UNIDENTIFIED ATTORNEY: (Inaudible at 01:58:41, low audio at sidebar.)

THE COURT: (Inaudible at 01:58:45, low audio at sidebar) has to be intended for uses of owner occupied dwelling, and I don't think it has been.

(END OF DISCUSSION AT SIDEBAR)

THE COURT: Could -- could folks keep it down? I don't know who -- this is like a key part of the case here, so let's just cool it.

(DISCUSSION AT SIDEBAR)

THE COURT: Go ahead. I think it's a parenthetical observation. I don't think it's -- it's defined as soon as the work was done, but someone can -- it's like someone registering (inaudible at 01:59:43, low audio at sidebar) house, you know, it's --

(Break in audio.)

THE COURT: -- have to be immediate, that's just what Mr. (inaudible at 00:02, low audio at sidebar) is going to do on the facts of this case. You think he has to go in (inaudible at 00:07, low audio at sidebar.)

UNIDENTIFIED ATTORNEY: Well, I think --

THE COURT: What if you say, well, I want (inaudible at 00:10, low audio at sidebar) property down the cape, I want my (inaudible at 00:11, low audio at sidebar) to use it for the first month, and then I am going to move into it the second month, are you telling me that that doesn't apply? That's (inaudible at 00:19, low audio at sidebar.)

UNIDENTIFIED ATTORNEY: I think what I'm saying is, and I think the way (inaudible at 00:23, low audio at sidebar.)

THE COURT: Just show me exactly what you want me to read?

UNIDENTIFIED ATTORNEY: It's just that last line because your voice, respectfully, did drop.

THE COURT: No, no. That's fine. (Inaudible at 00:41, low audio at sidebar) an hour and twenty minutes.

All right. Do you have any problems with me reading this?

UNIDENTIFIED ATTORNEY: No, your Honor. I was content with what you -- you're just re-reading what we agreed to.

THE COURT: All right. I will be happy to do that. Okay.

UNIDENTIFIED ATTORNEY: Thank you very much.

THE COURT: That's fine. That's what we do in this. Is there

anything else?

UNIDENTIFIED ATTORNEY: No.

UNIDENTIFIED ATTORNEY: About the jury instructions, no, your Honor.

THE COURT: All right. So you're on the verdict form. (Inaudible at 01:01, low audio at sidebar.) They're chomping at the bit to get out there.

So, this is what we'll do. I will -- I will them we're going to work on the jury verdict form. You folks (inaudible at 01:15, low audio at sidebar) Exhibits in order. (Inaudible at 01:20, low audio at sidebar) we'll let them chew on the Exhibits for the next fifteen minutes, and we'll correct all this. I apologize. I am not perfect.

(END OF DISCUSSION AT SIDEBAR)

THE COURT: All right. So, what I understand -- we're going to let you go in two seconds. I am going to highlight -- not highlight. To the extent that I may have misinformed you about that case, it was an Appeals Court case, and I will read you the definition that's been agreed to between the parties and that is from the Appeals Court.

The homeowner's house was preexisting owner occupied building under the law that regulates home improvement contracts, although the homeowner never lived in the house where remodeling was performed, where the house was preexisting, and the owner bought it to live in.

All right. I tried to do that as well as I could. Is that okay with you?

UNIDENTIFIED ATTORNEY: Thank you very much, your Honor.

THE COURT: Fair enough. Fair enough. Thank you.

Okay. I'm happy -- and thank you very much for correcting me, it's -- these are important points. All of these are important points, but I am happy to be corrected.

The jury verdict slip we've collected, we have them all, okay, so we're going to -- the lawyers and I are going to work on those, we're going to swear in Ms. Mullane. We'll get you some lunch, and let's see there was one other thing I wanted to say. I think that was it. I think that was it. Okay.

Anything else? Am I missing anything?

(Discussion off the record with Clerk.)

(Court Officer Sworn.)

THE COURT: All right. And I just remembered what I wanted to tell you. Two caveats or cautionary notes.

One, we do not have the ability to read back a juror -- a witness's testimony. If you say, what did Mr. Smith say during the course of the trial, we don't have that -- we don't have that capability. We are on a digital system which is better, but we don't have real time capability to transcribe what you heard.

Two, the Exhibits are the Exhibits that have been marked. That's it. We don't open it up for any other Exhibit. If you

say, well what about something that you may have heard in mention or passing, if it's not marked it, it's not to be considered, you know, as a document or a photograph or whatever.

Anything else, counsel? No. Great.

UNIDENTIFIED ATTORNEY: No, your Honor.

UNIDENTIFIED ATTORNEY: No, your Honor.

THE COURT: Thank you. So we'll work on the special jury verdict slip, and thank you very much for your attention.

COURT OFFICER: All rise, please.

(End of selected portion of transcript.)

(Adjourned)