# UNITED STATES BANKRUPTCY COURT
## FOR THE
## DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**ROBERT E. SPAGNUOLO, JR.,**                    Chapter 7
     Debtor                    Case No. 11-10844-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~

**EDWINA BROOKE-PETIT,**
     Plaintiff
v.                    Adv. P. No. 11-1290
**ROBERT E. SPAGNUOLO, JR.,**
     Defendant

~~~~~~~~~~~~~~~~~~~~~~~~~~~

**MEMORANDUM**

## I. INTRODUCTION

The matter before the Court is a Motion for Summary Judgment filed by the Plaintiff, Edwina Brooke-Petit (the "Plaintiff"), with respect to her two-count "Complaint to Determine Dischargeability" pursuant to 11 U.S.C. §§ 523(a)(2) and 523(a)(6). The Debtor, Robert Spagnuolo, Jr., d/b/a Spagnuolo Construction (the "Defendant" or the "Debtor"), filed an Opposition to the Motion and a Cross-Motion for Summary Judgment on Count II, Nondischargeability - 11 U.S.C. § 523(a)(6). The Debtor also filed a Motion to Strike in which he sought, inter alia, to strike a state trial court transcript, which was submitted to

1

the Court by the Plaintiff, on the grounds that it was untimely and excluded trial exhibits. The Debtor argued in the alternative for additional time to review the state trial court transcript, which had been submitted to the Court on March 1, 2013, and contained approximately 900-pages.

The Court heard the Motions on March 6, 2013. The Court denied the Debtor's Motion to Strike but granted the Debtor an opportunity to file, before March 22, 2013, a supplemental brief after review of the state trial court transcript.[1] The Court also afforded the Plaintiff the opportunity to file, by March 22, 2013, an amended complaint alleging specific facts to state a plausible claim for relief pursuant to 11 U.S.C. § 523(a)(6).[2] Finally, the Court took the parties' summary judgment motions under advisement.

The issue presented by the Motion for Summary Judgment is whether the Plaintiff is entitled to summary judgment because the Debtor is collaterally estopped from contesting his liability under § 523(a)(2)(A) based upon a state trial court jury verdict for fraud entered against the Debtor in favor of the Plaintiff.[3]

---

[1] The Debtor in his Motion to Strike also requested, in the alternative, that the Plaintiff be ordered to produce to the Court all trial exhibits. The Court determined that such materials would be discoverable should the matter proceed to trial but refused to order the production of such exhibits. The Debtor has since filed a supplemental brief that focuses on the merits underlying the state court claims.

[2] On March 21, 2013, the Plaintiff filed an Amended Complaint.

[3] Because the Court granted the parties additional time to address claims and defenses related to § 523(a)(6), the Court shall not consider the cross-motions for summary judgment on Count II (Nondischargeability - 11 U.S.C. § 523(a)(6)) or the Debtor's Motion to Dismiss Plaintiff's Amended Complaint as it pertains to Count II.

2

## II. BACKGROUND

The Debtor filed a voluntary Chapter 7 petition on February 1, 2011. The Debtor

listed the Plaintiff, among others, on Schedule F – Creditors Holding Unsecured

Nonpriority Claims as the holder of an unliquidated and disputed claim in the sum of

$280,000.  He described the claim as a "[j]udgment plus interest."  The judgment resulted

from a verdict entered by the Middlesex Superior Court, Department of the Trial Court,

following a four-day jury trial in which the Debtor was found liable to the Plaintiff in the

amount of $250,000 plus interest.

### A. The Plaintiff's Complaint

On September 28, 2011, the Plaintiff filed an adversary proceeding against the

Debtor, seeking a declaration that the judgment entered by the Superior Court was

excepted from discharge pursuant to 11 U.S.C. §§ 523(a)(2) and 523(a)(6).[4] She alleged that

in 2005 she engaged the Debtor to perform and supervise extensive renovations and

construction at property located at 131 Timberlane Drive, Mashpee, Massachusetts.

Specifically, the Plaintiff alleged that the Debtor failed to provide her with a written

construction contract prior to the commencement of the project; failed to obtain proper and

required permits in connection with the project; performed shoddy, incomplete and

incompetent work; failed to supervise subcontractors who also performed substandard

---

[4] As previously noted, on March 21, 2013, the Plaintiff filed an Amended Complaint
pursuant to the Court's order of March 6, 2013.  The amendments were material only to
the Plaintiff's claim under § 523(a)(6) and, therefore, do not affect the analysis in this
Memorandum.

3

work; caused the value of the property to be substantially diminished, resulting in the need

to tear down the existing structure and replace it with a new structure; and caused

substantial damages due to his "breach of contract and other failures and conduct."  In

addition, the Plaintiff alleged that the Debtor "made false representations including but not

limited to the services performed;" "fraudulently obtained money" from her; and "obtained

money . . . under false pretenses."  In her state court complaint, the Plaintiff sought

damages from the Debtor for breach of contract, fraud, and unfair and deceptive trade

practices pursuant to Mass. Gen. Laws ch. 93A and Mass. Gen. Laws ch. 142A governing

the regulation of home improvement contractors.

    B. <u>The Jury Instructions</u>

    In accordance with the Plaintiff's claims noted above, the Superior Court instructed

the jury on breach of contract, damages for breach of contract, damages for breach of a

construction contract, fraud, damages for fraud, and violations of Massachusetts General

Laws chapters 93A and 142A.  The court's jury instructions pertinent to whether collateral

estoppel applies in this case vis-à-vis § 523(a)(2)(A) are discussed in detail below.

    The state court began its instructions by admonishing the jury to "[c]onsider all of

my instructions as a whole.  Don't ignore any instruction.  Don't give special attention to

one in particular instruction.  Follow the law as I give it to you whether you agree with it

or not."  The judge also informed the jury about the difference between direct and

circumstantial evidence, noting that the jury could draw inferences or conclusions only

from facts that had been proven and that any inferences or conclusions drawn from the

facts must be reasonable and natural based upon common sense and life experience. He also informed the jury about determining the credibility of witnesses and drawing inferences from witnesses' testimony.

With respect to the Plaintiff's fraud count, the state court judge noted that the Plaintiff had alleged that the Debtor "misrepresented important facts including, but not limited to, the cost to do the construction remodeling services . . . , the materials to be used, the subcontractor work, the payments made to them, and the actual construction or remodeling work done on the plaintiff's property which the plaintiff says she would not have done if she had known the true state of affairs."

The court identified five elements that must be satisfied by a preponderance of the evidence to establish fraud, namely 1) "that [the defendant] made a false statement or statements to the plaintiff, and that statement . . . or those statements concerned some fact that a reasonable person would consider important to the decision that the plaintiff was about to make;" 2) that "when [the defendant] made the statement, the defendant either knew that the statement was false or recklessly made the statement by willfully disregarding its truth or falsity;" 3) the defendant "made the false statement with the intention that the plaintiff would rely on that statement in making her decision;" 4) "in making her decision, [the plaintiff] did in fact rely upon the defendant's statement as true and that . . . her reliance was reasonable under the circumstances;" and 5) "that the plaintiff suffered some financial loss as a result of relying on the defendant's false statement."

The court in its jury instructions then described the five elements in more detail,

5

beginning with the first element – a false statement of fact, while also addressing the second and third elements – knowledge of falsity and intent to induce reliance.  For instance, the court noted that "the defendant [could] be held responsible for an intentional or a reckless misrepresentation about an existing fact."  The court observed that the defendant could "be held responsible for a misrepresentation about his opinion, his estimate or intention, but only if he intentionally misrepresented his opinion, estimate, or intention."  The court instructed the jury that "[f]raud may be perpetrated by an implied as well as by an expressed representation," noting that the defendant could "be held responsible not only for outright untrue statements but also for giving misleading, partial information or for telling half-truths."  Before officially addressing the details of the second element, the court indicated that the first element might be satisfied through a combination of statements and conduct, if the combination was "calculated to mislead."

The court explicated the second element – "knowledge of falsity [or] willful disregard of truth or falsity," incorporating the third element which he described as "intent to induce reliance."

> [The defendant] is liable if he made a false statement of fact knowing it to be false.  Likewise, if he made an unqualified statement about facts, the truth or falsity of which he could've determined with certainty and gave [the plaintiff] the reasonable impression that he was speaking of his knowledge, [then the defendant] is not excused from liability if he didn't in fact know whether the statement was true or false.  The law regards such willful disregard of the facts as *equivalent to* an intentional misrepresentation.  *Actual intent to deceive need not be proven.*

(emphasis supplied).  The court addressed the third and fourth elements of fraud, stating: "[T]he plaintiff must prove that the defendant intended that the plaintiff would rely on the

misrepresentation and that reliance . . . must be reasonable." The court noted that the plaintiff "may recover only if her reliance on the defendant's statement was reasonable and justifiable under the circumstances," explaining that,

> [o]rdinarily, [the plaintiff] is not required to investigate the truth of assertions that were made to her. The recipient of a fraudulent misrepresentation of fact is ordinarily justified in relying on its truth, although she might have ascertained that [sic] the falsity of the representation had she made an investigation.

> If the defendant's representations were such so as to induce the plaintiff not to undertake an independent . . . - - examination of the pertinent facts, lulling her into placing confidence into his insurances, then her failure to ascertain the truth through investigation doesn't preclude recovery. This is so even though [the defendant's] representations were not conspicuously false.

The judge concluded his discussion by directing the jury that "if you reach the issue of damages, award [the plaintiff] a sufficient amount of money to put her in the position that she would've been in if the situation had been as represented by . . . the defendant," adding "award her the benefit of the bargain or the benefit of the contract with the defendant if those damages are proven with reasonable certainty, and mathematical precision is not required." The court also explained that "[i]f the misrepresentation caused the plaintiff . . . to incur any additional expenses that were reasonably foreseeable as a result of [the defendant's] misrepresentation then you're to award [the plaintiff] an additional amount of money that will compensate her for those additional expenses she incurred."

### C. The Special Jury Verdict Slip

The jury was given a Special Jury Verdict Slip. On that slip, it indicated its findings as to the Debtor's liability for each of the Plaintiff's claims, i.e., breach of contract, fraud,

and a violation of Massachusetts General Laws Chapter 142A.  The jury marked "yes" on

the Special Jury Verdict Slip four times to indicate each of the following 1) a contract existed

between the parties; 2) the defendant breached the contract; 3) the defendant "commit[ted]

fraud, deceit, and/or misrepresentation by any means, in connection with the services

provided;" and 4) the defendant violated Massachusetts General Laws chapter 142A.  Based

on those findings and in answer to question 5, "[w]hat amount of money would fully and

fairly compensate the Plaintiff for any injury and/or damage she has sustained because of

the Defendant's conduct, based on your answers to Questions 1 through 4,"the jury

awarded the Plaintiff $250,000 in total damages.[5]  After the jury was dismissed, the Court

conducted a hearing pursuant to Mass. R. Civ. P. 69 which  provides, in pertinent part, that

"[p]rocess to enforce a judgment for the payment of money shall be a writ of execution,

unless the court directs otherwise."[6]

---

[5] Having found a violation of chapter 142A, the Special Jury Verdict Slip contained an
instruction to the jurors that a violation of chapter 93A must also be found automatically
and that the jurors should proceed beyond the individual questions on the Jury Slip
regarding whether a chapter 93A violation occurred.  The next instruction on the Jury
Slip advised jurors that, having found a chapter 93A violation, they were permitted, at
their option, to award double or triple damages based on the amount of damages
already awarded.  The jury declined to award further damages.

[6] After the jury was dismissed and the judge had met privately with the jury to thank
them for their service, the judge conducted a Rule 69 hearing. At the hearing, the court
required the Debtor to provide sworn testimony regarding his assets.  After confirming
that the Debtor had heard the verdict against him, the court asked the Debtor whether
he "also heard that there was a fraudulent conduct engaged in by [him]" to which the
Debtor responded "Yes."  The court and the Plaintiff's attorney then proceeded to
question the Debtor about his assets, after which the court addressed the effect of the
commencement of a bankruptcy case, confirming the Debtor understood that, based on
the jury's finding of fraud, he would be unable to discharge the debt in bankruptcy.  The

D. <u>Appeal of the Jury Verdict</u>

The Debtor appealed the jury verdict, but the appeal was later dismissed.[7]   The

parties differ as to the motivation behind the appeal.   Nevertheless, the parties appear to

agree that the judgment is final and no further appeal is possible.

## III. POSITIONS OF THE PARTIES

A. <u>The Plaintiff</u>

The Plaintiff argues that the jury's finding of fraud in its verdict against the Debtor

in Superior Court precludes the Debtor from now relitigating the issue of whether the debt

is nondischargeable pursuant to § 523(a)(2)(A).   The Plaintiff notes that 1) juries are

presumed to follow their instructions, 2) the jury was instructed on the elements of fraud,

3) the jury found the Debtor engaged in fraudulent conduct, and 4) the jury awarded

damages to the Plaintiff.  The Plaintiff asserts that the jury's award of damages was entirely

---

following colloquy took place:

> THE COURT. . . [W]e want this judgment satisfied.  We don't want people,
> you know, walking away from them and thinking that because, you know,
> because they can declare bankruptcy as some people think that they could
> they're going to get away from it.  But, this is a fraudulent finding by the
> jury, do you understand that?
> THE DEFENDANT: Yes.
> THE COURT: It's not protected by bankruptcy.  We -- we all on the same
> page?
> THE DEFENDANT: Yes.

[7] The Plaintiff asserts that the appeal was dismissed with prejudice.  The Debtor has not
contested that assertion.

attributable to fraud and, thus, is fully nondischargeable.  The Plaintiff suggests that if the

Debtor believed the jury's findings to be incomplete based on a failure to allocate the

damages among the various findings of liability, then the Debtor should have requested

clarification in state court either after the trial or on appeal.  The Plaintiff thus concludes

that " [t]he consequence of [the Debtor's] failure to act is that there is no jury finding that

he can rely upon to assert all of the damages did not result from fraud.  Consequently, there

is no basis for this Court to find that a portion of the damages did not result from fraud."

### B. The Debtor

The Debtor argues that the jury's verdict was inconclusive and, therefore, has no

preclusive effect because the jury verdict form did not require the jury to allocate the

damages among the Plaintiff's claims of liability.  In support of his assertion, the Debtor

notes that "[t]he Plaintiff had ample opportunity to request a breakdown of the Jury's

Verdict and there is no indication that she did so."  The Debtor thus concludes:

> [T]he Bankruptcy Court cannot guess nor can it discern from the Jury Verdict
> whether the losses sustained by the fraud count (which the [Debtor] does not
> concede should be given collateral estoppel effect at all) was one ($1.00)
> dollar, ten ($10.00) dollars or two hundred fifty thousand ($250,000) dollars,
> and without the jury sitting to answer that question, respectfully, the Court
> cannot enter a finding of non-dischargeability based upon collateral estoppel.

The Debtor further argues that collateral estoppel cannot apply because the issue decided

by the jury was not identical to the issue to be decided under § 523(a)(2)(A).  He asserts that

§ 523(a)(2)(A) requires a finding of actual fraud, not merely fraud implied in law, and that

the judge's instructions to the jury did "not meet the heightened standard of actual fraud

required to prevail on a claim under 11 U.S.C. § 523(a)(2)."  Specifically, the Debtor asserts

10

that the jury instructions lacked the requisite scienter element for fraud, i.e., that "the jury

was never instructed to find that the Debtor 'intended to deceive' the Plaintiff." Focusing

on the judge's instruction that "[a]ctual intent to deceive need not be proven," the Debtor

concludes that the elements of fraud as presented to the jury were not analogous to the

elements required for a finding of fraud under 11 U.S.C. § 523(a)(2)(A) and, therefore,

collateral estoppel should not apply.

Finally, the Debtor argues that the Plaintiff has failed to put forward evidence to

support a claim under § 523(a)(2)(A), asserting that "[f]raud must not only be shown as a

cause in fact, but that it was the legal cause of the Plaintiff's losses." Again noting that the

damages were not allocated by the jury, the Debtor asserts that the Plaintiff has not

established that the damages were attributable to any fraudulent conduct on the part of the

Debtor.

## IV. DISCUSSION

### A. <u>Applicable Law</u>

#### 1. Section 523(a)

Section 523(a)(2)(A) excepts from discharge "any debt . . . for money . . . to the extent

obtained by . . . false pretenses, a false representation, or actual fraud . . . ." 11 U.S.C. §

523(a)(2)(A). To establish the nondischargeability of such debt, a plaintiff must show by

a preponderance of the evidence that

> 1) the debtor made a knowingly false representation or one made in reckless
> disregard of the truth, 2) the debtor intended to deceive, 3) the debtor
> intended to induce the creditor to rely upon the false statement, 4) the
> creditor actually relied upon the misrepresentation, 5) the creditor's reliance

11

was justifiable, and 6) the reliance upon the false statement caused damage.

McCrory v. Spigel (In re Spigel), 260 F.3d 27, 32 (1st Cir. 2001) (footnote omitted) (citing

Palmacci v. Umpierrez, 121 F.3d 781, 786 (1st Cir. 1997)(citing Restatement (Second) Torts

§ 525 (1977)).  The First Circuit in McCrory, stated: "[t]hough the first two elements of the

Palmacci test describe the conduct and scienter required to show fraudulent conduct

generally, the last four embody the requirement that the claim of the creditor arguing

nondischargeability in an adversary proceeding must arise as a direct result of the debtor's

fraud."  260 F.3d at 32 (footnote omitted). The First Circuit also has ruled that "while fraud

may not be implied in law, it may be inferred as a matter of fact," adding that "[t]he finder

of fact may infer[ ] or imply [ ] bad faith and intent to defraud based on the totality of the

circumstances when convinced by a preponderance of the evidence."  Palmacci, 121 F.3d

at 789 (internal quotation marks omitted).  The Court of Appeals for the First Circuit noted

that "a determination concerning fraudulent intent depends largely upon an assessment

of the credibility and demeanor of the debtor." Id. at 785.

"Regarding the first element, the concept of misrepresentation includes a false

representation as to one's intention, such as a promise to act.  'A representation of the

maker's own intention to do . . . a particular thing is fraudulent if he does not have that

intention' at the time he makes the representation." Palmacci, 121 F.3d at 786 (citing, inter

alia, the Restatement (Second) of Torts § 530(1) (1977)).  For the purposes of the second

element, the "intent to deceive" or scienter requirement, i.e. "the intent to deceive,

manipulate or defraud," the First Circuit indicated that that element may be established if

12

the maker of the misrepresentation:

> (a) knows or believes that the matter is not as he represents it to be; (b) does not have the confidence in the accuracy of his representation that he states or implies; or (c) knows that he does not have the basis for his representation that he states or implies.

Id. at 787 (quoting Restatement (Second) of Torts § 526 (1977)).[8] *See also* DSC Nat'l Props.,

Inc. v. Johnson (In re Johnson), 477 B.R. 156, 169-70 (B.A.P. 10th Cir. 2012).  The Palmacci

Court expanded its discussion of § 526(b) of the Restatement, stating the following:

> [it] includes the situation where the maker of a misrepresentation asserts something "so positively as to imply that he has knowledge" of its factual basis, even though he is conscious that he does not know the fact to be true. Scienter exists even if he believes the "fact" is true, if he is aware that he does not in fact possess the certitude that he implies by the manner in which he makes his representation.  One who makes a statement as if it were one of positive fact ("as though he knew it") engages in a "conscious deception" if he realizes he does not know the truth of his statement, even though he honestly believes its truth.  In such a case, the person is deemed to have the intent to deceive (scienter), not so much as to the fact itself, but rather as to the extent of his information.  "This is often expressed by saying that fraud is proved if it is shown that a false representation has been made . . . recklessly, careless of whether it is true or false."

---

[8] The Palmacci court identified the "intent to deceive" requirement as the scienter requirement for § 523(a)(2)(A), citing § 526 of the Restatement (Second) of Torts entitled "Conditions Under Which Misrepresentation is Fraudulent (Scienter)."  Comment a to § 526 is instructive:

> The word "fraudulent" is here used as referring solely to the maker's knowledge of the untrue character of his representation. This element of the defendant's conduct frequently is called "scienter" by the courts.  Intent and expectation of influencing the other's conduct by the misrepresentation are dealt with in §§ 531-536 as a separate and distinct element necessary to liability under the rule stated in § 525.

Restatement (Second) of Torts § 526 cmt. a (1977).

121 F.3d at 787 (citations omitted).

In Cummings v. HPG, Int'l, Inc., 244 F.3d 16 (1st Cir. 2001), a case that did not

involve a claim under § 523(a)(2)(A), the First Circuit noted that deceit is a variety of fraud

and cited the Restatement (Second) of Torts § 526 to define the elements. Id. at 23. It stated

that "[i]n an action for deceit under Massachusetts law, a plaintiff must show that the

defendant: made a false representation of material fact; for the purpose of inducing reliance;

and that plaintiff relied upon the representation to his or her detriment." Id. at 22 (citing

Danca v. Taunton Sav. Bank, 385 Mass. 1, 429 N.E.2d 1129, 1133 (Mass. 1982); Snyder v.

Sperry & Hutchinson Co., 368 Mass. 433, 333 N.E.2d 421, 428 (Mass. 1975)). Like the

Superior Court, it stated: "Proof of intent to deceive is not required, so long as there is

proof of a false representation of fact susceptible of the speaker's knowledge." Id. (citing

Snyder, 333 N.E.2d at 428). Noting the lack of clarity in Massachusetts law as to the "role

the speaker's knowledge of the falsity plays," the First Circuit in Cummings clarified that

role with reference to the formulation set forth in the Restatement (Second) of Torts § 526,

which it referenced in Palmacci. See Cummings, 244 F.3d at 23.

In Vaks v. Grenier (In re Grenier), No. 07-1131, 2009 WL 763352 (Bankr. D. Mass.

Mar. 19, 2009), this Court observed the following:

> Intent to deceive presents a factual question which courts determine by
> considering a variety of factors, including the debtor's financial condition at
> the time the representations were made and the debtor's false representations
> to others. See Taylor v. DeFalco (In re DeFalco), 353 B.R. 449 (Bankr. W.D. Pa.
> 2006). Intent to deceive may be inferred when it is shown that the debtor did
> not have the intention of performing his obligations under the contract. See
> Fensick v. Segala (In re Segala), 133 B.R. 261, 264 (Bankr. D. Mass. 1991) (citing

14

Merchants Nat'l Bank & Trust Co. v. Pappas (In re Pappas), 661 F.2d 82 (7th Cir. 1981))("a contract to perform home improvements implies an intent to perform in accordance with the contract."). *See also* OSB Mfg., Inc. v. Hathaway (In re Hathaway), 364 B.R. 220, 232 (Bankr. E.D. Va. 2007) ("[A] misrepresentation occurs when funds are entrusted to a debtor for a specific purpose, and the debtor has no intention of using the money for that purpose.").

2009 WL at *9.

### 2. Collateral Estoppel or Issue Preclusion

In Backlund v. Stanley-Snow (In re Stanley-Snow), 405 B.R. 11 (B.A.P. 1st Cir. 2009), the United States Bankruptcy Panel for the First Circuit stated:

The doctrine of collateral estoppel applies in bankruptcy dischargeability proceedings. *See* Grogan v. Garner, 498 U.S. 279, 285 n. 11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). In determining whether a party should be estopped from relitigating an issue decided in a prior state court action, the bankruptcy court must look to that state's law of collateral estoppel. *See* Spigel, 260 F.3d at 33 (citing New Hampshire Motor Transp. Ass'n v. Town of Plaistow, 67 F.3d 326, 328 (1st Cir.1995)); *see also* Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985) (stating that the full faith and credit statute, 28 U.S.C. § 1738, "directs a federal court to refer to the preclusion law of the State in which the judgment was rendered."). Under Massachusetts law, collateral estoppel precludes relitigation of issues in prior actions between the parties or those in privity with those parties, provided the issues were actually litigated in the first action, and determined by a "final judgment on the merits." Smith Barney, Inc. v. Strangie (In re Strangie), 192 F.3d 192, 194 (1st Cir.1999). To apply the doctrine, a court must determine that: (1) there was a valid and final judgment on the merits in the prior adjudication; (2) the party against whom estoppel is asserted was a party (or in privity with a party) to the prior litigation; (3) the issue in the prior adjudication is identical to the issue in the current litigation; and (4) the issue in the prior litigation was essential to the earlier judgment. Alba v. Raytheon Co., 441 Mass. 836, 809 N.E.2d 516, 521 (2004) (citations omitted). The Supreme Judicial Court of Massachusetts has noted that "the 'guiding principle' in determining whether to allow a party to use collateral estoppel is whether the party against whom it is asserted had a 'full and

fair opportunity to litigate the issue in the first action or [whether] other circumstances justify affording him an opportunity to relitigate the issue.'" Treglia v. MacDonald, 430 Mass. 237, 717 N.E.2d 249, 253 (1999) (quoting Martin v. Ring, 401 Mass. 59, 514 N.E.2d 663 (1987)).

Stanley-Snow, 405 B.R. at 18.

"'The party asserting the doctrine [of collateral estoppel] has the burden of proving that all of the threshold requirements have been met.'" B.B. v. Bradley (In re Bradley), 466 B.R. 582, 586 (B.A.P. 1st Cir. 2012) (quoting Honkanen v. Hopper (In re Honkanen), 466 B.R. 373, 382 (B.A.P. 9th Cir. 2011)). "It is that party's burden to 'introduce a record sufficient to reveal the controlling facts and pinpoint the exact issues litigated in the prior action.'" Lerario v. Nardone (In re Nardone), No. 05-21490, Adv. No. 06-1019, 2008 WL 2705524, at *3 (Bankr. D. Mass. July 7, 2008) (quoting Kelly v. Okoye (In re Kelly), 182 B.R. 255, 258 (B.A.P. 9th Cir. 1995), aff'd, 100 F.3d 110 (9th Cir. 1996)).

3. Summary Judgment

In the event collateral estoppel applies, the Plaintiff will be entitled to summary judgment as there will be no material facts in dispute. See Fed. R. Civ. P. 56(a); Trenwick Am. Reinsurance Corp. v. Swasey (In re Swasey), 488 B.R. 22, 33 (Bankr. D. Mass. 2013) (citing Desmond v. Varrasso (In re Varrasso), 37 F.3d 760 (1st Cir. 1994)).[9]

---

[9] In Desmond, the First Circuit stated:

> It is apodictic that summary judgment should be bestowed only when no genuine issue of material fact exists and the movant has successfully demonstrated an entitlement to judgment as a matter of law. See Fed. R. Civ. P. 56(c). As to issues on which the movant, at trial, would be obliged to carry the burden of proof, he initially must proffer materials of evidentiary or quasi-evidentiary quality—say, affidavits or

4. Jury Instructions

In this case, a determination of whether the elements of collateral estoppel have been met requires an assessment of both the jury's findings that led to the entry of the state court judgment and the jury instructions given by the state court judge that led to those findings. In Petrucelli v. D'Abrosca (In re D'Abrosca), No. 09–01070–ANV, 2011 WL 4592338 (B.A.P. 1st Cir. Aug. 10, 2011), the United States Bankruptcy Appellate Panel for the First Circuit considered jury instructions in the context of application of collateral estoppel to claims under 11 U.S.C. § 523(a)(4) and the grant of summary judgment. It observed:

> Courts in other contexts have grappled with whether the state court jury instructions were sufficient to allow for application of collateral estoppel in a nondischargeability action. *See, e.g.,* Duncan v. Duncan (In re Duncan), 448 F.3d 725, 729–30 (4th Cir. 2006) (declining to apply collateral estoppel for summary judgment where jury instruction resulted in two categories of willful and wanton conduct[]); Bailey v. Cook (In re Bailey), 34 Fed. Appx. 150 (5th Cir. 2002) (ruling jury instructions and findings rose to the level of § 523(a)(2)(A) warranting application of collateral estoppel); Hobson Mould Works, Inc. v. Madsen (In re Madsen), 195 F.3d 988, 989–90 (8th Cir. 1999) (granting summary judgment as jury instruction definitions were equal to standards under § 523(a)(6)); Stahl v. Gross, 288 B.R. 655, 658 (Bankr. E.D.N.Y. 2003) ("An examination of the jury instructions in the context of the applicable law governing the tort of malicious prosecution clearly demonstrates that the issue of willfulness within the meaning of § 523(a)(6) was actually and

---

depositions—that support his position.

37 F.3d at 763 (citations omitted, footnote omitted). Fed. R. Civ. P. 56 was amended effective December 1, 2010. The summary judgment standard now appears in subsection (a) of Rule 56, rather than at subsection (c). The amended rule, however, does not change the standard for summary judgment. *See* Farmers Ins. Exch. v. RNK, Inc., 632 F.3d 777, 782 n.4 (1st Cir. 2011).

necessarily litigated in the earlier malicious prosecution action."); <u>Big River Props., Inc. v. Stafford (In re Stafford)</u>, 223 B.R. 94, [sic] (Bankr. N.D. Miss. 1998) (granting summary judgment based upon issue preclusion as jury instruction contained same standard for action under § 523(a)(2)(A)).

<u>In re D'Abrosca</u>, 2011 WL 4592338 at *8.

    B. <u>Analysis</u>

The Superior Court judge's jury instructions for "Intentional Misrepresentation (Fraud/Deceit)," mirror standardized jury instructions used in the Massachusetts trial courts. The standard jury instructions provide the following with respect to the second element articulated by both the Superior Court in its jury instructions and by the First Circuit in <u>Palmacci</u>:

> § 20.1.4 Knowledge of Falsity, or Willful Disregard of Truth or Falsity
>
> The defendant is liable for deceit if [he/she] made a false statement of fact, knowing it to be false. Likewise, if the defendant made an unqualified statement about facts, the truth or falsity of which the defendant could have determined with certainty, and gave the plaintiff the reasonable impression that [he/she] was speaking of [his/her] own knowledge, then the defendant may also be liable for deceit even if the defendant was ignorant as to the statement's falsity. In other words, the plaintiff need not establish that the defendant knew the statement was false, as long as the defendant could have easily found out the truth and failed to do so. The law regards such willful disregard of the facts as equivalent to an intentional misrepresentation. Actual intent to deceive need not be proven.

Hon. Patrick F. Brady, *Misrepresentation*, in 2 Stephen D. Anderson et al., Massachusetts Superior Court Civil Practice Jury Instructions § 20.1.4 (Hon. Patrick F. Brady & Joseph D. Lipchitz eds., 2d ed. 2008 & Supp. 2011) (footnotes omitted). *See also* CIVJIII MA-CLE 20-1, Massachusetts Continuing Legal Education, Inc. (West 2011). Thus, as described in the instruction, in a situation where it has been established by the plaintiff that the defendant's

representation was false or the defendant knew that he had no basis for the truth or falsity

of the representation, "[t]he law regards such willful disregard of the facts as equivalent to

an intentional misrepresentation.  Actual intent to deceive need not be proven." <u>Id.</u> (citing

<u>Snyder v. Sperry & Hutchinson Co.</u>, 368 Mass. 433, 444 (1975)).[10] That is, the plaintiff need

not prove that the defendant knew that the information was false; rather the plaintiff can

establish that the defendant knew that he did not ascertain the accuracy of his

representation or had no basis for the representation.

The jury instruction, which the Superior Court utilized, does not exactly track the

language utilized in the Restatement (Second) of Torts § 526.  Nevertheless, it embodies its

directive.  *See* <u>Acushnet Fed. Credit Union v. Roderick</u>, 26 Mass. App. Ct. 604, 606

(1988)(citing  Restatement (Second) of Torts § 526, cmt (c) and stating that "actionable

misrepresentation may occur without the speaker's knowledge that the statement is false

if the truth is reasonably susceptible of actual knowledge, or otherwise expressed, if,

through a modicum of diligence, accurate facts are available to the speaker").

Turning to the four elements that must be established for application of collateral

estoppel, the first two elements, as well as the fourth element, are satisfied in this case.  The

jury's verdict and the subsequent dismissal of the Debtor's appeal established a final

---

[10] The court in <u>Snyder</u> stated: "an intentional misrepresentation is not a prerequisite to
recovery for deceit." 368 Mass. at 444.  It added:  "'the charge of fraudulent intent, in an
action for deceit, may be maintained by proof of a statement made as of the party's own
knowledge, which is false; provided the thing stated is not merely a matter of opinion,
estimate, or judgment, but is susceptible of actual knowledge; and in such case it is not
necessary to make any further proof of an actual intent to deceive.'"  <u>Id.</u> (citations
omitted).

judgment on the merits in the prior adjudication.  The party against whom estoppel is asserted, the Debtor, was a party to the prior adjudication, as the defendant.  In addition, the issue to be decided in the prior adjudication was essential to the judgment.

The parties' present dispute centers on whether the issue decided by the jury in the Superior Court case is identical to the issue presented in the adversary proceeding under § 523(a)(2)(A).  That is, whether the elements of fraud under Massachusetts law, as found by the jury based on the jury instructions, and fraud under § 523(a)(2)(A) are identical.  If the two standards are sufficiently identical, then the Debtor is collaterally estopped from litigating the merits of an exception to discharge under § 523(a)(2)(A).

Specifically, under § 523(a)(2)(A), a plaintiff must prove actual fraud, not simply fraud implied by law. According to the court in In re Nardone, "[f]raud implied in law refers to fraud that 'does not require a showing of bad faith or immorality. . . . Therefore, a mere breach of contract by the debtor without more, does not imply existence of actual fraud for purposes of the exception to discharge under § 523(a)(2)(A).'"  2008 WL 2705524, at *4 (citing In re Guy, 101 B.R. 961, 978 (Bankr. N.D. Ind. 1988) (internal quotation marks and citations omitted)).  The court added: "Actual fraud 'requires an actual intent to mislead, which is more than mere negligence. . . .'"  Id. (quoting Palmacci, 121 F.3d at 788).

In Nardone, the bankruptcy court, citing the decision in Sack v. Friedlander (In re Friedlander), 170 B.R. 472, 476 (Bankr. D. Mass. 1994), observed that "[t]he standards to establish 'intentional misrepresentation' under Massachusetts law may or may not be the same as those needed to find the debt nondischargeable under § 523(a)(2)(A)," adding "[i]t

depends on what the phrase 'intentional misrepresentation' encompasses, including whether the speaker needs to have actual knowledge of the falsity of the statement in order to prove his intent to deceive."  2008 WL 2705524, at *5.  The court stated that "one position includes the requirement that a defendant have made a false representation of a material fact with knowledge of its falsity, for the purpose of inducing the plaintiff to act."  Id. (citing Danca v. Taunton Savings Bank, 385 Mass. 1 (1982)).  The court also observed that there was another "seemingly irreconcilable line of cases" holding that intentional misrepresentation is not a prerequisite to recovery for deceit.  Nardone, 2008 WL 2705524 at *4 (citing  Snyder v. Sperry & Hutchinson Co., 368 Mass. 433, 444, 333 N.E.2d 421, 428 (Mass. 1975)).  According to the Nardone court, the Danca test is virtually identical with the requirements of § 523(a)(2)(A), while the Snyder requirements for fraud are not."  Id. (footnote omitted).[11]  The court relied upon the decision in Cummings and the Restatement

_____

[11] The Synder court stated:

> "In this Commonwealth it has been held in a long line of cases that 'the charge of fraudulent intent, in an action for deceit, may be maintained by proof of a statement made as of the party's own knowledge, which is false; provided the thing stated is not merely a matter of opinion, estimate, or judgment, but is susceptible of actual knowledge; and in such case it is not necessary to make any further proof of an actual intent to deceive.'"

Snyder, 333 N.E.2d 421, 428 (Mass. 1975).  In Danca, the court stated: "In a deceit action, the plaintiff must prove 'that the defendant made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act . . . .'" Danca, 429 N.E.2d at 1133 (Mass. 1982).  In Nardone, the court also observed that the confusion surrounding the elements of deceit has not diminished, referencing the Massachusetts Appeals Court decision of Zimmerman v. Kent, 31 Mass. App. Ct. 72, 575 N.E.2d 70, 74 (1991), in which the court, while citing Danca, set forth the elements of misrepresentation without listing the requirements that the speaker have knowledge of

(Second) of Torts § 526 to reconcile the disparate line of cases.

Although the Superior Court summarized the elements of fraud under Massachusetts law in the jury instructions by referencing five elements, and the First Circuit in McCrory and Palmacci referenced six elements under § 523(a)(2)(A), the standards align. Notably, the First Circuit in Cummings condensed the number of elements to three.  This Court concludes that the actual number of elements used is not dispositive and finds that the jury instructions delivered by the Superior Court satisfy the requirements for an exception to discharge under § 523(a)(2)(A).

First, § 523(a)(2)(A) requires that "the debtor made a knowingly false representation or one made in reckless disregard of the truth." McCrory, 260 F.3d at 32 (citing Palmacci, 121 F.3d at 786).  The Superior Court judge instructed the jury that fraud under Massachusetts law requires "that [the defendant] made a false statement or statements to the plaintiff" and that "when [the defendant] made the statement, the defendant either knew that the statement was false or recklessly made the statement by willfully disregarding its truth or falsity."  The formulation of this element by the First Circuit is virtually identical to the Superior Court's statement that "the second element . . . is that when [the defendant] made the statement, the defendant either knew that the statement

_____

the falsity of his statement and the intent to deceive.  Nardone, 2008 WL 2705524, at *6. The court in Nardone recognized that the First Circuit reconciled the two lines of cases in Cummings, 244 F.3d at 22-23, with reference to the Restatement (Second) of Torts § 526.  Notably, the court in Zimmerman referenced Acushnet, which had cited the Restatment.

was false or recklessly made the statement by willfully disregarding its truth or falsity."

Second, § 523(a)(2)(A) requires that "the debtor intended to deceive." McCrory, 260 F.3d at 32 (citing Palmacci, 121 F.3d at 786). As previously noted, this requirement may be met in one of several ways: if the maker of the misrepresentation "(a) knows or believes that the matter is not as he represents it to be; (b) does not have the confidence in the accuracy of his representation that he states or implies; or (c) knows that he does not have the basis for his representation that he states or implies." Palmacci, 121 F.3d at 787 (quoting Restatement (Second) of Torts § 526 (1977)). As noted above, the Superior Court's jury instructions with respect to knowledge of falsity embody the scienter element required by § 523(a)(2)(A). The Superior Court informed the jury that the Debtor would be liable if he made a false statement knowing it to be false or "if he made an unqualified statement about facts, the truth or falsity of which he could've determined with certainty and gave . . . [the plaintiff] . . . . the reasonable impression that he was speaking of his knowledge." In sum, the state court stated willful disregard of facts is equivalent to intentional misrepresentation. Having instructed the jury about direct and circumstantial evidence, the court indicated that "[a]ctual intent to deceive need not be proven," although it preceded that comment by observing that "[t]he law regards . . . willful disregard of the [truth or falsity of the] facts as the equivalent to an intentional misrepresentation."

This Court concludes that the state court's discussion of the second element "knowledge of falsity or willful disregard of truth or falsity" incorporated the provisions of the Restatement (Second) of Torts § 526 utilized by the First Circuit in Palmacci and

23

<u>Cummings</u>.  Moreover, the state court's use of the phrase "intent to deceive" clearly was a reference to direct evidence of intent to deceive, as generally intent is determined from all the facts and circumstances, including a willful or reckless disregard for the truth or falsity of statements, lack of an intention to perform obligations under the contract, or receipt and misuse of funds specified for a specific purpose coupled with lack of intention to use the funds for the specified purpose.  A focus on the state court's use of the sentence, "[a]ctual intent to deceive need not be proven," ignores the context of the court's preceding statements.  In other words, the Plaintiff was required to prove actual fraud and could establish actual fraud and the intent to deceive with reference to § 526 of the Restatement (Second) of Torts and circumstantial evidence.

Third, § 523(a)(2)(A) requires that "the debtor intended to induce the creditor to rely upon the false statement." <u>McCrory</u>, 260 F.3d at 32 (citing <u>Palmacci</u>, 121 F.3d at 786).  The Superior Court instructed the jury that, under Massachusetts law, fraud requires that the defendant "made the false statement with the intention that the plaintiff would rely on that statement in making her decision."  There is no discrepancy between these two descriptions.

Fourth, § 523(a)(2)(A) requires that "the creditor actually relied upon the misrepresentation."  <u>McCrory</u>, 260 F.3d at 32 (citing <u>Palmacci</u>, 121 F.3d at 786).  The Superior Court instructed the jury that, under Massachusetts law, fraud requires that "in making her decision, [the plaintiff] did in fact rely upon the defendant's statement as true." Again, there is no discrepancy between the two descriptions.

24

Fifth, § 523(a)(2)(A) requires that "the creditor's reliance was justifiable." <u>McCrory</u>, 260 F.3d at 32 (citing <u>Palmacci</u>, 121 F.3d at 786). The Superior Court instructed the jury that, under Massachusetts law, fraud requires that the plaintiff's "reliance was reasonable under the circumstances." In its more detailed instructions, the court reiterated that the Plaintiff's reliance must have been "reasonable" and that the Plaintiff "may recover only if her reliance on the defendant's statement was reasonable and justifiable under the circumstances." "Reasonable reliance" and "justifiable reliance" are used interchangeably in Massachusetts but reasonable reliance equates to the higher common law standard, which exceeds the justifiable reliance required under § 523(a)(2)(A). <u>Field v. Mans</u>, 516 U.S. 59, 74-75 (1995); <u>Unger v. Lambert (In re Lambert)</u>, 459 B.R. 519, 525 (Bankr. D. Mass. 2011). Thus, because the jury implicitly found reasonable reliance, justifiable reliance was present for purposes of § 523(a)(2)(A).

Finally, § 523(a)(2)(A) requires that "the reliance upon the false statement caused damage." <u>McCrory</u>, 260 F.3d at 32 (citing <u>Palmacci</u>, 121 F.3d at 786). The jury was similarly instructed that fraud under Massachusetts law requires "that the plaintiff suffered some financial loss as a result of relying on the defendant's false statement." These descriptions, too, appear equivalent. Thus, based on the preceding analysis, the jury instructions and the jury verdict comport with the requirements for an exception to discharge under § 523(a)(2)(A), and collateral estoppel applies to preclude relitigation of the Plaintiff's claim. Given the preclusive effect of the judgment, there can be no genuine dispute as to any material fact on the issue of whether fraud was committed that led to a nondischargeable

25

debt under § 523(a)(2)(A).  Accordingly, the Plaintiff is entitled to judgment as a matter of law.

## V. CONCLUSION

Upon consideration of the foregoing, the Court shall enter an order granting the Plaintiff's Motion for Summary Judgment with respect to Count I of her Complaint.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated:  May 15, 2013