# UNITED STATES BANKRUPTCY COURT
## FOR THE
## DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**ROBERT E. SPAGNUOLO, JR.,**                    Chapter 7
      Debtor                                 Case No. 11-10844-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**EDWINA BROOKE-PETIT,**
      Plaintiff
v.                                               Adv. P. No. 11-1290
**ROBERT E. SPAGNUOLO, JR.,**
      Defendant

~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## MEMORANDUM

## I. INTRODUCTION

On May 15, 2013, this Court  granted the Plaintiff's Motion for Summary Judgment as to Count I of her Complaint and dismissed Count II.  *See* Brooke-Petit v. Spagnuolo (In re Spagnuolo), 491 B.R. 1 (Bankr. D. Mass. 2013), *aff'd in part, vacated in part, and remanded,* 506 B.R. 1 (D. Mass. 2014).  In granting the Motion of Edwina Brook-Petit (the "Plaintiff"), this Court determined that the Defendant, Robert E. Spagnuolo, Jr. (the "Defendant" or the "Debtor"), was precluded by the principle of collateral estoppel from challenging a state

1

court jury verdict for fraud under 11 U.S.C. § 523(a)(2)(A).[1]  The Defendant appealed this

Court's order granting the Plaintiff summary judgment to the United States District Court

for the District of Massachusetts.  The District Court affirmed this Court's decision in part,

vacated it in part, and remanded the matter for findings as to the limited issue as to what

portion of the jury verdict in the sum of $250,000 was attributed to fraud because "the state

court instructed the jury on breach of contract, damages for breach of contract, damages

for breach of a construction contract, fraud, damages for fraud and violations of Mass. Gen.

L. c. 93A and c. 142A."   Spagnuolo v. Brooke-Petit, 506 B.R. 1, 3 (D. Mass. 2014).

Specifically, the District Court determined that this Court correctly held that issue

preclusion barred re-litigation of whether the Debtor's conduct, found to constitute fraud

by the jury following a trial in the state court, was excepted from discharge.  The District

Court, however, determined that "a jury's failure to allocate damages between a cause of

---

[1] The Plaintiff filed a two-count "Complaint to Determine Dischargeability" pursuant to 11 U.S.C. §§ 523(a)(2) (Count I) and 523(a)(6) (Count II) on September 28, 2011. She subsequently moved for summary judgment with respect to both counts. The Defendant filed an Opposition to the Plaintiff's Motion for Summary Judgment and a Cross-Motion for Summary Judgment on Count II. The Court heard the Plaintiff's Motion for Summary Judgment and the Defendant's Cross-Motion on March 6, 2013. The Court took the Plaintiff's Motion for Summary Judgment as to Count I under advisement, and granted the Plaintiff's Motion for Summary Judgment with respect to that count.  At the March 6, 2013 hearing, the Court afforded the Plaintiff an opportunity to amend her complaint as to Count II under 11 U.S.C. § 523(a)(6). The Plaintiff filed a First Amended Complaint on March 21, 2013. The Defendant filed a Motion to Dismiss both Counts I and II of the amended complaint on April 2, 2013. Because the Court granted the Plaintiff summary judgment as to Count I, it determined that the Debtor's Cross-Motion for Summary Judgment as to Count II of the original complaint and the Motion to Dismiss Count I of the amended complaint were moot. The Court granted the Debtor's Motion to Dismiss Count II of the Plaintiff's Amended Complaint.

action that is consistent with the federal standard of nondischargeability and a cause of action that does not rise to that standard cannot be the basis of a judgment that has a preclusive effect without further findings regarding same on remand." Spagnuolo v. Brooke-Petit, 506 B.R. at 7 (citing In re Gallagher, 388 B.R. 694, 704 (W.D.N.C. 2008); In re Raccuglia, 464 B.R. 477, 483 (Bankr. N.D. Ga. 2011); and In re Lowery, 440 B.R. 914, 926 (Bankr. N.D. Ga. 2010)).  The District Court observed that this Court neither allocated the damages determined by the jury verdict to the Debtor's fraud nor determined that the jury verdict was entirely attributable to the fraud count.  Id. at 8.

## II. BACKGROUND

### A. Procedural Background

Following remand, this Court conducted a status conference on August 5, 2014. Counsel to both parties agreed on a procedure for this Court to determine the issue identified by the United States District Court in its remand order.  Pursuant to that procedure, counsel submitted affidavits to which they attached relevant portions of the state court trial transcripts and briefs.  Indeed, counsel to the Plaintiff attached the entire transcript from the state court trial.

### B. The Trial in the State Court[2]

At trial, the Plaintiff testified that she interviewed and obtained bids from a number of contractors to perform improvements to her vacation residence located at 131

---

[2] In the Discussion section of this Memoranda, where appropriate, the Court shall refer to the testimony elicited by the parties at the trial in the state court.

3

Timberlane Drive, Mashpee, Massachusetts, including a bid in the sum of $225,000 from

a contractor she identified as Mr. Priestly.  The Plaintiff testified that the Debtor originally

bid $250,000 for the job, but, after a discussion in which she informed him of Mr. Priestly's

bid, he reduced his bid to $200,000 to obtain the work.  He represented to the Debtor that

he would only charge her for labor and materials and that the absence of a written contract

would save her money.  In her brief, the Plaintiff summarized the evidence as follows:

> From the inception of the relationship [in September of 2005], the Defendant
> engaged in misrepresentations knowing the Plaintiff would rely upon them.
> He didn't tell the Plaintiff that he would not produce a contract until he
> showed up at the job with his workers. The fact that he refused to enter into
> a written contract evidences his intent to deceive the Plaintiff into continually
> tendering funds far in excess of the work completed.

With respect to the Debtor's job performance, the Plaintiff stated:

> The Defendant both performed certain services himself, and hired and
> supervised other contractors to provide services in connection with the
> project including subcontractors related to the defendant. The Defendant
> failed to obtain proper and required permits, and the permit he did obtain
> was incomplete, incorrect and signed without authorization from the
> Plaintiff. The Defendant made false representations to the Plaintiff and
> fraudulently obtained money from the Plaintiff. More specifically, the
> Defendant lied on the building permit and lied about code violations,
> beginning with the failure to use pressure treated wood at the very start of
> the job in the basement, which he admitted. He represented the basement
> concrete floor was supposed to be 4" and he instead installed a 2" floor. He
> left rotted sills and built on top of them. He installed Tyvek wrap wrong and
> left it exposed. He used insufficient or no hangers, made no attempt to install
> lally columns correctly, he installed a door in [the] basement that was not to
> code, he installed a picture window at the wrong height and with no support,
> other windows were not installed with proper headers and supports,
> skylights were installed wrong, the pitch of the deck was reversed so no
> water could drain, and without anything underneath for support. He
> violated basic code from the start. He took $200,000.00 and barely completed
> $50,000.00 worth of work. He violated basic building codes then walked off

4

the job leaving it incomplete.

In sum, he did nothing a contractor of his experience would or should do which demonstrates not negligence, but intentional misrepresentations.

In addition to the evidence summarized by the Plaintiff, the evidence introduced at the trial in the state court established that the Plaintiff paid $3,800 for building plans prepared by the Debtor's nephew. The Plaintiff produced invoices and canceled checks made payable to the Debtor, or subcontractors or suppliers, in the total sum of $182,188. In addition, the Plaintiff produced evidence that, after the Debtor left the job site, she paid $5,000 to a contractor identified as Philip Ambrose to patch the roof and clean up the Mashpee property which was strewn with trash and debris when the Debtor left the job site; $20,000 to a contractor identified as Mr. Marchio to fully repair the roof; $20,000 to a contractor identified as Mr. Lucas to demolish the structure; $4,500 to an environmental consultant to address wetland issues ignored by the Debtor; and $350 to erect a safety barrier, for total expenditures of $235,838.

C. The Jury Instructions

The state court instructed the jury as to breach of contract and damages for breach of contract. With respect to damages it stated:

Damages is a - - kind of a vague word we use to mean like financial losses or harm or injury, some - - sometimes they refer to them as injury, but there's no - - no physical injury here, no personal injury like in a motor vehicle car case, a motor vehicle accident. It's - - we're talking about financial loss is what we're really talking about.

***

5

[T]he basic principle of contract damages is that the injured party should be put in as good a position as if the other party had fully performed its obligations under the contract.  So the basic principle is to put the person in as good a position as if the other party had fully performed its obligations under the contract. . . .  [I]f the damages were caused by Mr. Spagnuolo . . . Ms. Brooke-Petit is entitled to recover damages sufficient to give her the benefit of the contract bargain as long as those damages are reasonably proven.  In other words, she's entitled to those damage[s] that would put her in a position to obtain what she bargained to obtain, such as compensation in money that can be computed by rational methods upon a firm factual basis.

The state court, while noting that the Plaintiff could recover both general and specific damages, informed that jury as to the measure of damages specific to construction contracts, stating:

[I]n a construction contract, the measure of damages is where the builder fails to complete a construction job, and it should be measured by the difference between the value of the job - - of the work in disrepair and the value of the subject structure if satisfactorily completed according to the contract.  So the measure of damages awarded in a construction contract should be, where the builder fails to complete a construction job should be measured by the difference between the value of the - - value of the work in disrepair and the value of the subject structure if satisfactorily completed according to the contract.

With respect to the Plaintiff's fraud count, the state court judge noted that the Plaintiff had alleged that the Debtor "misrepresented important facts including, but not limited to, the cost to do the construction remodeling services . . . , the materials to be used, the subcontractor work, the payments made to them, and the actual construction or remodeling work done on the plaintiff's property which the plaintiff says she would not have done if she had known the true state of affairs." After identifying the five elements required to establish fraud, see In re Spagnuolo, 491 B.R. at 5-6, the state court directed the

6

jury that "if you reach the issue of damages, award [the plaintiff] a sufficient amount of money to put her in the position that she would've been in if the situation had been as represented by . . . the defendant," adding "award her the benefit of the bargain or the benefit of the contract with the defendant if those damages are proven with reasonable certainty, and mathematical precision is not required." The court explained that "[i]f the misrepresentation caused the plaintiff . . . to incur any additional expenses that were reasonably foreseeable as a result of [the defendant's] misrepresentation then you're to award [the plaintiff] an additional amount of money that will compensate her for those additional expenses she incurred."

The state court also instructed the jury about Mass. Gen. Laws ch. 142A, noting that under the statute every agreement to perform residential contracting service in an amount in excess of $1,000 has to be in writing and contain certain information including a time schedule of payments.  The state court judge also informed the jury that section 17 of ch. 142A proscribes:  1) abandoning or failing to perform, without justification, any contract; 2) failing to credit the owner with any payment made to the contractor in connection with a residential contract; 3) making any material misrepresentation in the procurement of the contract or making any false promise of a character likely to influence, persuade, or induce the contract; and 4) violating any building law.[3]

---

[3] Mass. Gen. Laws ch. 142A, § 17 provides that: "[v]iolations of any of the provisions of this chapter shall constitute an unfair or deceptive act under the provisions of chapter ninety-three A."

Finally, with respect to Mass. Gen. Laws ch. 93A, the state court judge asked the jury to first determine whether the Debtor's actions were unfair or deceptive and then "to decide whether Mr. Spagnuolo willingly and knowingly committed that unfair or deceptive act or practice," adding that "[a]n unfair or deceptive statement is willful if the speaker represents a fact to be true without knowing whether it is true or not, and with false - -  and with reckless disregard for whether it's true or not." The court also advised the jury that "if you find that Mr. Spagnuolo committed an unfair or deceptive act or practice willfully or knowingly, then Ms. Brooke-Petit is entitled to an award of up to three times, but no less than two times, the actual damages you've determine[d] the plaintiff, Ms. Brooke-Petit, to have sustained."

D. The Special Jury Verdict Slip

At the conclusion of the trial, counsel to the Plaintiff and counsel to the Debtor had an extensive colloquy with the judge as to the form and content of the Special Jury Verdict Slip.  According to this Court,

> On that slip, it [the jury] indicated its findings as to the Debtor's liability for each of the Plaintiff's claims, i.e., breach of contract, fraud, and a violation of Massachusetts General Laws Chapter 142A. The jury marked "yes" on the Special Jury Verdict Slip four times to indicate each of the following 1) a contract existed between the parties; 2) the defendant breached the contract; 3) the defendant "commit[ted] fraud, deceit, and/or misrepresentation by any means, in connection with the services provided;" and 4) the defendant violated Massachusetts General Laws chapter 142A. Based on those findings and in answer to question 5, "[w]hat amount of money would fully and fairly compensate the Plaintiff for any injury and/or damage she has sustained because of the Defendant's conduct, based on your answers to Questions 1 through 4," the jury awarded the Plaintiff $250,000 in total damages.

8

<u>In re Spagnuolo</u>, 491 B.R. 1, at 6-7.  In a footnote, the Court observed:

> Having found a violation of chapter 142A, the Special Jury Verdict Slip
> contained an instruction to the jurors that a violation of chapter 93A must
> also be found automatically and that the jurors should proceed beyond the
> individual questions on the Jury Slip regarding whether a chapter 93A
> violation occurred. The next instruction on the Jury Slip advised jurors that,
> having found a chapter 93A violation, they were permitted, at their option,
> to award double or triple damages based on the amount of damages already
> awarded. The jury declined to award further damages.

<u>Id.</u> at 7 n.5.

After the jury was dismissed, the state court judge immediately conducted a hearing

pursuant to Mass. R. Civ. P. 69 which provides, in pertinent part, that "[p]rocess to enforce

a judgment for the payment of money shall be a writ of execution, unless the court directs

otherwise."  At the hearing, the state court judge required the Debtor to provide sworn

testimony regarding his assets. After confirming that the Debtor had heard the verdict

against him, the court asked the Debtor whether he "also heard that there was . . .

fraudulent conduct engaged in by you," to which the Debtor responded "Yes." The state

court and the Plaintiff's attorney then proceeded to question the Debtor about his assets.

Indeed, the state court, apparently incensed with the Debtor's conduct, required the Debtor

to immediately turn over his Lincoln Navigator to the Plaintiff and to empty his pockets in

open court for purposes of turning over to the Plaintiff any money he had in his possession.

In addition, the Court stated:

> I want to see a writ of attachment as to any personal property that Mr.
> Spagnuolo has, and any trustee process as to any bank accounts that he's got.
>
> I also want to see five years of tax returns turned over to . . .  Mr. Magerer

[Plaintiff's counsel] by the end of the week.

The state court judge then addressed the effect of the commencement of a bankruptcy case,

confirming the Debtor understood that, based on the jury's finding of fraud, he would be

unable to discharge the debt in bankruptcy. The following colloquy took place:

> THE COURT ... [W]e want this judgment satisfied. We don't want people,
> you know, walking away from them and thinking that because, you know,
> because they can declare bankruptcy as some people think that they could
> they're going to get away from it. But, this is a fraudulent finding by the jury,
> do you understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: It's not protected by bankruptcy. Are we all on the same page?
>
> THE DEFENDANT: Yes.

## III. POSITIONS OF THE PARTIES

### A. The Plaintiff

The Plaintiff, referring to the Special Jury Verdict Slip, contends that $250,000 was

the full measure of damages to fully and fairly compensate the Plaintiff for the Debtor's

fraud.  Based upon the facts which were established at trial, the Plaintiff asserts that the

entire $250,000 verdict resulted from the Debtor's fraud and that the judgment should be

excepted from discharge in this bankruptcy proceeding. The Plaintiff adds that the state

court's order requiring the Debtor to turnover his automobile to the Plaintiff  was

indicative of its belief that there "was a finding of fraud and the total amount of damages

were attributable to the Defendant[']s fraudulent conduct."  The Plaintiff further states that

there is nothing in the jury instructions that permit the inference that the damages from

fraud did not constitute the entire amount of the judgment. She argues as follows:

> If the Defendant thought the jury findings were incomplete, it was incumbent upon him to present evidence during the trial to support a finding of negligence, let alone have the jury instructions and findings distinguish between damages resulting from different counts if he thought the damages were different from different counts in the complaint. The Defendant had every opportunity to differ the amount of damages resulting from the different counts at the time of trial, preparation of jury instructions and subsequent appeal. He did not do so. The consequence of his failure to act is that there is no evidence or jury finding that he can rely upon to assert all of the damages did not result from fraud. Consequently, there is no basis for this Court to find that a portion of the damages did not result from fraud.

In addition, the Plaintiff contends that, during the trial in the state court, she produced sufficient evidence to support a finding that all damages resulted from the Debtor's fraudulent conduct. She also asserts that under Solimene v. B. Grauel & Co., K.G., 399 Mass. 790 (1987),[4] ambiguity is not to be construed in favor of disregarding a verdict

---

[4] The court in Solimene stated:

> When a case is submitted to the jury under rule 49(b) of the Massachusetts Rules of Civil Procedure, 365 Mass. 812 (1974), the jury is required to render a general verdict and to make answers to interrogatories. Rule 49(b) sets forth several alternatives for evaluating the jury responses. If the general verdict and the answers are consistent, judgment shall be entered in accord with them. If the jury's answers to interrogatories are consistent with each other but not with the general verdict, judgment may be entered on the answers. This power to enter judgment despite the difference between the answers and the general verdict does not violate the Seventh Amendment right to jury trial because the court does not reevaluate the jury's findings of fact. Instead, the more specific answers are allowed to control the general verdict. 5A *Moore's Federal Practice* par. 49.04 (2d ed. 1986). These alternatives set forth in the rule indicate that objection prior to discharge of the jury is necessary, and courts have applied a waiver rule if counsel fails to object to the inconsistencies. *See, e.g.*, McCue v. Prudential Ins. Co., *supra* 371 Mass. at 663, 358 N.E.2d 799; Fernandez v. Chardon, 681 F.2d 42, 58 (1st Cir.1982), *aff'd sub nom.* Chardon v. Fumero Soto, 462 U.S.

reached after many days of trial.

B. <u>The Debtor</u>

The Debtor argues that none of the damages set forth in the Special Jury Verdict Slip can be attributed to fraud.  In the alternative, he contends that, were this Court to find that some of the damages are attributable to fraud, then no more than $32,000 of the $250,000 awarded should be attributed to the fraud finding.  Specifically, he contends that 1) the jury award is "clear on its face" that the damages suffered by the Plaintiff were not attributable to the fraud finding but rather to the jury's finding of breach of contract; 2) the jury's refusal to find a violation of Mass. Gen. Laws ch. 93A, by implication, proves that the damage award could not have been attributable to the fraud finding and, therefore, must be based upon breach of contract; and 3) if any portion of the jury verdict can be attributed to fraud, the maximum amount that this Court could find is $32,000, the amount by which he contends he may have overcharged the Plaintiff for work performed.

---

650, 103 S.Ct. 2611, 77 L.Ed.2d 74 (1983), <u>Service Publications, Inc. v. Goverman</u>, 396 Mass. 567, 573, 487 N.E.2d 520 (1986). There is no constitutional infirmity because, despite the inconsistencies, there is enough evidence of the jury's resolution of the dispute for a valid judgment to be entered. Thus, the procedure under rule 49(b) differs from that under rule 49(a).

If there is total inconsistency, meaning that the answers are inconsistent with each other and inconsistent with the general verdict, "judgment shall not be entered, but the court shall return the jury for further consideration of its answers and verdict or shall order a new trial." Mass. R. Civ. P. 49(b).

<u>Id.</u> at 801 n.14.

Relying upon <u>Youssef v. Fogarty (In re Fogarty)</u>, No. 08-10564, Adv. P. No. 08-1112,

2010 WL 916818 (Bankr. D. Mass. March 10, 2010),[5] the Debtor argues that he "can identify

a handful of possible statements and/or actions . . . that the jury could have determined

were statements made or actions by the Defendant that the Plaintiff would have relied

upon in her decision to hire the Defendant and/or pay the Defendant," adding that "only

one of the statements was actually made to the Plaintiff before and while the Plaintiff was

determining whether or not to hire the Defendant or pay him."

The Debtor maintains that the jury could have deduced that he made a

representation that the total contract price, with all work included, was $200,000, stating

that "[t]his is the sole statement that was made by the Defendant which *pre-dated* the

Plaintiff's decision to hire the Defendant, and when examined, in light of the fraud finding

and the damage award, it does not support the allocation of damages to the fraud count."

The Debtor points to the testimony of the Plaintiff's expert witness that the Debtor

performed work valued at $90,000 before cure costs.[6]  The Debtor maintains that the "[t]he

---

[5] In <u>Fogarty</u>, this Court determined that the Chapter 7 debtor's obligation arising from an alleged fraudulent representation resulting in the breach of a construction contract was dischargeable because the creditor failed to establish scienter or the absence of an intention to complete the contract in accordance with its terms.

[6] The Plaintiff's expert witness testified that "the work was probably about 45% done *if everything was correct*, and at $200,000 total, that would be about 85, $90,000 (emphasis supplied).  At the time the Plaintiff's expert inspected the property, the Debtor had walked off the job.  The Defendant maintains that that fact was disputed and that he left the job because the Plaintiff was bouncing checks and failed to pay for work performed. The Debtor submitted no credible evidence that the Plaintiff was routinely bouncing checks or failed to pay for work performed.  Moreover, the Plaintiff had paid the Debtor in excess of $180,000, or 90% of the Debtor's bid, at the time he left the job site.

13

undisputed facts are that the Defendant did not leave the property with the intent not to

return and complete the work  and although he may have performed substandard work,

he was willing to try to meet his obligations to the Plaintiff as promised."[7]

The Debtor also asserts that his representation that he would provide the Plaintiff

with a written contract could not have "formed the nexus needed for a fraud damage

award as alleged by the Plaintiff, because M.G.L. c. 142A specifically governs the terms of

home improvement contracts in the Commonwealth of Massachusetts and although the

jury found a violation of the same, they did not attribute any M.G.L. c. 93A damages in

their award," even though a violation of ch. 142A is an automatic violation of ch. 93A.  The

Debtor argues that the jury's refusal to find a violation of Mass. Gen. Laws ch. 93A

supports the conclusion that the ch. 142A violations did not damage the Plaintiff.

The Debtor further contends that his representation that the Plaintiff was better off

without a written contract because it would save her money was governed by ch. 142A and

cannot form the basis of a damage award for fraud because the jury failed to award the

Plaintiff damages under ch. 93A.  In addition, he maintains that his promise to apply for

all permits did not cause any damages.  He states :

---

Moreover, although the Debtor maintained at trial that he intended to return to the job,
the evidence established that he had acquired a property in the North End of Boston on
which he was working in May of 2006. The Court finds it more likely than not that the
jury did not believe the Debtor's testimony that he intended to return to the site to
complete the job, particularly where the cost of finishing the job far exceeded the $20,000
remaining under the contract.

[7] In addition to the evidence noted in note 6, the jury verdict under Mass. Gen. Laws ch.
142A belies that assertion.

14

Even assuming arguendo that the defendant's statement that he would obtain permits was fraudulent, there is no proof offered in the trial transcripts that the issuance of the permits would have in any way prevented the Plaintiff's losses or that she relied upon them in taking any action which resulted in her losses.

With respect to the invoices in excess of what was owed to him (i.e., $32,000), the Debtor contends the Plaintiff paid them without reviewing them and, therefore, there was no reliance, and no proof of causation. Similarly, with respect to his representation that he would complete unfinished work, "all the sums paid by the Plaintiff to the Defendant or the subcontractors had been paid by the Plaintiff and therefore, this statement could not form the basis of fraud (reliance) damages."

The Debtor also contends that the jury's refusal to award damages under ch. 93A proves, by implication, that the $250,000 damage award could not have been attributable to fraud and must, as a consequence, be attributable to breach of contract. In the Debtor's view, it can be deduced that the only damages the jury found on the fraud count were nominal and that the actual damages awarded were related to breach of contract because of the manner in which the Special Jury Verdict Slip was completed and the jury's failure to award double or treble damages.

Finally, the Debtor computes the following as the measure of breach of contract damages:

| | |
|---|---|
| $250,000 | (value of job-contract price + subcontractors) |
| ($50,000) | (value of satisfactorily completed work) |
| $200,000 | (construction contract damages) |
| $ 49,850 | (additional expenses incurred) |
| $249,850 | ($250,000 - rounded up) |

Thus, the Debtor concludes that the jury's decision not to award the Plaintiff double or treble damages under ch. 93A is instructive, reasoning that it only found that he damaged the Plaintiff as a result of the poor job he did renovating her home.

## IV. DISCUSSION

This Court has reviewed the entire transcript of the trial in the state court. Based upon that transcript, the Court concludes that the Debtor's position that no damages should be allocated to the Plaintiff's claim for fraud is without merit. Moreover, the absence of a dollar award under ch. 93A does not support the Debtor's proposition that the jury determined that the Plaintiff suffered only nominal damages from the Debtor's fraud. For the jury to find that the Debtor engaged in fraudulent conduct, it was required to find that the Plaintiff was damaged, as damage is an essential element of the cause of action. This Court, citing McCrory v. Spigel (In re Spigel), 260 F.3d 27, 32 (1st Cir. 2001), and Palmacci v. Umpierrez, 121 F.3d 781, 786 (1st Cir. 1997), noted in its decision that "§ 523(a)(2)(A) requires that 'the reliance upon the false statement caused damage" . . . and that . . . "[t]he jury was similarly instructed that fraud under Massachusetts law requires 'that the plaintiff suffered some financial loss as a result of relying on the defendant's false statement.'" Brooke-Petit v. Spagnuolo (In re Spagnuolo), 491 B.R. at 15-16. Thus, there can be no doubt that the jury determined that the Plaintiff was damaged by the Debtor's fraud.

Nevertheless, the jury, in determining that the Debtor breached his contract with the Plaintiff, engaged in fraudulent conduct, and violated Mass. Gen. Laws ch. 142A, was not

16

asked to, and did not expressly, allocate the damages to specific claims pursuant to the

Special Jury Verdict Slip; it simply awarded the Plaintiff $250,000 for the three counts and

refused to double or triple the damages under ch. 93A. The Court concludes, however, that

it is more probable than not that the jury determined that the Plaintiff was entitled to

$250,000 in damages for all three counts - - breach of contract, fraud, and violation of Mass.

Gen. Laws ch. 142A. Because Mass. Gen. Laws ch. 142A, § 17(4) proscribes, among other

things, "making any material misrepresentation in the procurement of a contract or making

any false promise of a character likely to influence, persuade or induce the procurement

of a contract," this Court infers that the jury's award was intended to compensate the

Plaintiff for the Debtor's fraudulent conduct in inducing the Plaintiff into entering into an

unwritten contract that he did not intend to perform and subsequently breached because

the measure of damages for breach of contract and fraud, as articulated by the state court,

is substantially similar. The jury's failure to award damages under ch. 93A or to even mark

the Special Jury Verdict Slip with respect to the ch. 93A claim merely suggests to this Court

that the jury did not intend to double or triple the damages awarded to the Plaintiff as the

$250,000 award represented the complete award for the totality of the Debtor's wrongful

conduct. Indeed, the jury did not need to separately check the Special Jury Verdict Slip for

ch. 93A as they had, in essence, already done so with respect to ch. 142A which constituted

an automatic violation of ch. 93A.

In reaching this conclusion, this Court finds that the jury instructions as to the

measure of damages for breach of a construction contract[8] and the measure of damages for

fraud[9] are substantially similar. Moreover, the jury instructions were entirely consistent

with Massachusetts law.

In <u>Fecteau Benefits Group, Inc. v. Knox</u>, 72 Mass. App. Ct. 204, 890 N.E.2d 138

(2008), the court set forth the measure of damages for breach of contract, observing:

> The long-settled rule for breach of contract recovery is that a wronged party
> is entitled to receive the *benefit of the bargain*, that is, "be placed in the same
> position as if the contract had been fully performed." <u>Doering Equip. Co. v.
> John Deere Co.</u>, 61 Mass. App. Ct. 850, 855–856, 815 N.E.2d 234 (2004),
> quoting from <u>John Hetherington & Sons, Ltd. v. William Firth Co.</u>, 210 Mass.
> 8, 21, 95 N.E. 961 (1911). As an alternative, however, Massachusetts law
> permits a party to recover "restitution damages," that is, "an amount
> corresponding to any benefit conferred by the plaintiff upon the defendant
> in the performance of the contract disrupted by the defendant's breach."
> <u>Sullivan v. O'Connor</u>, 363 Mass. 579, 583, 296 N.E.2d 183 (1973).

<u>Fecteau Benefits Group, Inc.</u>, 72 Mass. App. Ct. at 208-09 (emphasis supplied).  Similarly,

in <u>Rokowsky v. Gordon</u>, 531 F.Supp. 435 (D. Mass. 1982), *aff'd*, 705 F.2d 439 (1st Cir. 1983),

*cert. denied*, 462 U.S. 1120 (1983), the court stated the following with respect to fraud

damages:

> The general rule of damages in fraud cases under Massachusetts law is that
> the plaintiff is entitled to recover *the benefit of his bargain*. <u>Robichaud v. Athol
> Credit Union</u>, 352 Mass. 351, 225 N.E.2d 347 (1967). The defendant is correct

---

[8] To paraphrase the state court's jury instruction, where the builder fails to complete a
construction job, damages should be measured by the difference between the value of
the work in disrepair and the value of the structure satisfactorily completed.

[9] To paraphrase the state court's jury instruction, award the plaintiff an amount of
money representing the difference between the value of the work in disrepair and as
misrepresented by the defendant and the value of the structure if satisfactorily
completed according to the agreement if the misrepresentations had not been made.

in asserting that the rule may be varied in order to achieve a more just result. Rice v. Price, 340 Mass. 502, 164 N.E.2d 891 (1960). The cited case does not stand for the proposition, however, that it is ever error to apply the general rule.

Rokowsky, 531 F.Supp. at 439 (emphasis supplied).  Thus, there is no inconsistency in the jury's measure of damages for breach of contract and fraud.  In other words, the jury reasonably could have concluded that the damage to the Plaintiff from breach of contract and from fraud was the same.

In addition, the Plaintiff produced evidence that the Debtor represented that a written contract was unnecessary because, without one, he could save the Plaintiff money by charging her only for labor and materials. Although the Plaintiff desired a written contract, the Debtor and his crew began work without a written contract at the end of September or early October of 2005, thereby presenting the Plaintiff with a fait accompli. The Debtor, who testified that he had 34 years experience as a home improvement contractor, attempted, incredibly, to disclaim knowledge of the requirements of ch. 142A. His failure to comply with the statute and his false representation to the Plaintiff that the absence of a contract would save her money, permitted the jury, and permits this Court, to infer that the Debtor procured the contract by fraud, and that whatever shoddy work he performed on the house was little more than a smoke screen or a ruse to extract money from the Plaintiff for his benefit and that of his relatives until the onset of winter when they could and did walk off the job.

The jury had sufficient evidence to determine that the Debtor procured the contract

by fraud.  According to the court in <u>DiMare v. Ameriquest Mortg. Co. (In re DiMare)</u>, 462

B.R. 283 (Bankr. D. Mass. 2011), "[u]nder Massachusetts law, to prove fraud in the

inducement, a plaintiff is 'required to establish the elements of common law deceit, which

include 'misrepresentation of a material fact, made to induce action, and reasonable

reliance on the false statement to the detriment of the person relying." <u>Id.</u> at 302 (citing,

*inter alia*,  <u>Sullivan v. Decision One Mortg. (In re Sullivan)</u>, 346 B.R. 4, 19 (Bankr. D. Mass.

2006), and  <u>Commerce Bank & Trust Co. v. Hayeck</u>, 46 Mass. App. Ct. 687, 693, 709 N.E.2d

1122 (1999)) (internal quotations omitted).  If a contract was procured by fraud, the

measure of damages is the benefit of the bargain, namely $250,000.

In view of the evidence of the abysmal quality of the work performed by the Debtor

and the need to demolish the structure, the Court has no difficulty inferring that $250,000

can be allocated to the Debtor's fraud, where that sum was the original bid provided by the

Debtor to the Plaintiff.  In view of the Plaintiff's wish to complete the renovations before

the 2006 summer rental season, she was forced to rely upon the Debtor's representations

as to the scope and timing of the work, as well as other material terms that are required to

be in a written contract pursuant to Mass. Gen. Laws ch. 142A, § 2, when the Debtor and

his crew showed up unannounced at the property in late September or early October of

2005.  His representation that an unwritten contract for $200,000 for labor and materials

would save her money was false.  Significantly, as was established at trial, his

representation was inherently inconsistent because a fixed price contract in the sum of

$200,000 could not equal direct payments to contractors and suppliers for labor and

materials.  The manner in which the Debtor invoiced the Plaintiff, his false statement on

the building permit as to the contract price, and the work performed, which was so

defective that the structure was unsalvageable, could have permitted the jury, and leads

this Court, to infer that the Debtor never intended to complete the project in a manner

consistent with any stated intent or recognized building practices.  The Debtor's fraud so

tainted the parties' relationship that a separate allocation of damages for fraud is

impossible.   In other words, fraud was not a mere component of the jury's award but,

instead, was the basis for the entire award.

In this regard, the Plaintiff's expert witness testified that the Debtor had completed

about 45% of the work on the project which would have been worth about $90,000.  The

expert, however, qualified his testimony, emphasizing that that sum was "if everything

was correct."  When asked what his opinion was about the relative costs for a new builder

to come in and correct and finish what Mr. Spagnuolo did compared to demolishing the

home and starting anew, he testified as follows:

> To correct it, you would have to fix the roof framing for the cathedral, which
> my only guess would be to remove and replace those outside walls along
> that exiting area.  You'd have to remove all of the TYVEK, all of the
> windows, the siding, a bunch of the roofing to come back, and then with
> electrical and plumbing, you would have to remove it all and start over
> because a trades person won't assume the liability of somebody else's work,
> so they'll have to bring it back to base and start over again.  All of that said
> and done, that's probably 30%, 40% of the work, so we're down to $50,000 for
> the value of the work done now, and at that point, with what's there and
> what still needs to be done and whatever else we might find, I mean I'd
> recommend tearing it down and starting over.

Accordingly, based upon that testimony, the jury could have determined that there was no

21

value to the work performed by the Debtor, and the benefit of the bargain to the Plaintiff for the Debtor's fraud was his original bid amount of $250,000.

There are other circumstances that compel this Court to conclude that $250,000 is allocable to the Plaintiff's claim for fraud.  The Debtor could have, but did not seek, a determination as to the allocation of damages following the trial, thereby permitting the inference that he, like the state court judge and the attorneys present, did not understand the jury's award to be anything other than a "joint and several" damage award.  In Fecteau Benefits Group, Inc. v. Knox, 72 Mass. App. Ct. 204, 890 N.E.2d 138 (2008), the court considered the defendant's claim that the jury verdict form was inappropriate because the jury was asked to make only one award for both the contract and fraud claims." 72 Mass. App. Ct. at 208 n.12.  According to the court, the defendant, Knox, argued that "the verdict form was 'necessarily confusing because it did not recognize any distinction between the measures of damages for breach of contract and fraud.'"  Id.  The court determined that because Knox did not object to the verdict form, he waived the objection on appeal.  Id. (citing Shafnacker v. Raymond James & Assocs., 425 Mass. 724, 733, 683 N.E.2d 662 (1997); Beaupre v. Cliff Smith & Assocs., 50 Mass. App. Ct. 480, 492–493, 738 N.E.2d 753 (2000); Mass. R. Civ. P. 49(a)).  Although this Court is not solely relying upon a waiver by the Debtor, this Court notes that the parties conferred with the judge for a substantial amount of time relative to the jury instructions and the Special Jury Verdict Slip.  The Debtor should have been alert to the allocation of damages at that time.

Significantly, the state court implicitly determined that the full damage award was

related to the Debtor's fraud and expressly advised him as follows:

> Because we want this judgment satisfied. [sic] We don't want people . . .
> walking away from them and thinking that because . . . they can declare
> bankruptcy  as some people think . . . [and] . . . they're going to get away
> from it.  But, this is a fraudulent finding by the jury . . . .  It's not protected by
> bankruptcy.

The Debtor indicated at that time that he understood the judge's cautionary statements and

knew the award for fraud was not nominal, but in the amount of $250,000.

## V. CONCLUSION

From this Court's review of the transcript from the state court trial and the parties'

memoranda, the Court finds that the $250,000 damage award is attributable to the Debtor's

fraud and is nondischargeable.

By the Court,

*Joan N. Feeney*

Joan N. Feeney
United States Bankruptcy Judge

Dated:  November 17, 2014

23